Commonwealth *v.* Progress Manufacturing Company, Appellant.

Argued May 28, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD and JONES, JJ.

reargument refused August 1, 1957.

*John Y. Scott,* for appellant.

*George W. Keitel,* Deputy Attorney General, with him *Thomas D. McBride,* Attorney General, for appellee.

OPINION BY MR. JUSTICE MUSMANNO, June 28, 1957:

On August 2, 1954, the Department of Revenue accepted the capital stock report of the Progress Manufacturing Company, a Pennsylvania corporation, which announced its capital stock to be valued at $3,200,000, as appraised by the company's officers. On the basis of that valuation, the Department settled the tax at $15,753.54. The settlement was approved by the Auditor General on August 11, 1954. However, on April 28, 1955, with the approval of the Auditor General, the Department found the capital stock's value to be $4,-250,000, and resettled the tax in the amount of $20,-922.66.

The company protested the resettlement and petitioned the Board of Finance and Revenue for a review, which was refused. An appeal was then taken to the Court of Common Pleas of Dauphin County which, after a hearing without jury, dismissed the appeal and entered judgment in favor of the Commonwealth in the sum of $20,922.66. An appeal to this Court followed.

The re-evaluation of capital stock and resettlement of tax was accomplished by the Department under the authority of Section 1105 of the Fiscal Code (Act of 1929, P. L. 343, as amended; 72 P.S. 1105), which provides: "Within two years after the date of any settlement or resettlement made subsequent to June first, one thousand nine hundred and twenty-nine, except such as have been appealed from, the Department of Revenue with the approval of the Department of the Auditor General, may make a resettlement. Notice of such resettlement shall be given promptly to the party with whom or with which the resettlement was made. Whenever a resettlement shall have been made hereunder, the Department of Revenue shall resettle the account according to law, and shall credit or charge as the case may be, the amount resulting from such re-

settlement upon the current accounts of the party with whom or with which it is made . . ."

The company seeks a reversal of the decision of the Court below on two averments: (1) that Section 1105 of the Fiscal Code amounts to an unconstitutional delegation of legislative power; and (2) granting that the Department had the right to make a resettlement, it may not increase the tax except for clerical or mathematical errors, unless it has in its possession accounts and information which it did not have at the time of the original settlement.

In behalf of the thesis of unconstitutionality, the company argues: "It will be observed that the section contains absolutely no norm or standard to guide the taxing departments in determining when, and under what circumstances they shall act to reopen an account, theretofore closed, and set at rest by settlement or resettlement. So far as the Section provides, the Departments may, in their uncontrolled discretion open some cases and neglect or fail to open other cases. No conditions are laid down as to which cases shall be reopened and which not reopened; and, of course, no direction is given to the departments to open all cases or all cases of a given class exhibiting certain characteristics. The decision to reopen and resettle any particular tax account, as for example, the one here in question, may be made by the departments in their complete discretion. This total absence of statutory standards for their guidance in this respect renders the section clearly unconstitutional."

This argument is untenable. Section 1105 does not delegate legislative power. It assigns administrative duties. The legislative power is exercised by the Legislature in determining what tax is to be assessed, the rate of the tax, and upon what type of property it is to be imposed. The valuation of the property to be

taxed is left, of necessity, to the administrative officers. In the case of *American Baseball Club of Philadelphia v. Philadelphia*, 312 Pa. 311, we said: "The administration of all taxing and licensing statutes is based on reasonableness as determined by some basic factor. In the levying of a realty tax, though the rate is fixed by proper authority, the basic factor is the value of the property to be taxed and that is determined by administrative officers. It is the determination of this value which fixes the amount of tax . . . In this case while the rate is definite, $5.50 per policeman required for an eight hour day, the base to which the rate is to be applied is left to *administrative officers* for determination. . . ." (Emphasis supplied).

As the fixing of the original assessment cannot be regarded as the performance of a legislative function, so also the re-assessment cannot be so designated. In making a resettlement, as in arriving at the original settlement, the taxing authorities appraise the actual value of the capital stock, as they are bound to do in accordance with the provisions of the Capital Stock Tax Law (72 P.S. 1871, 1891, and 1901), and, of course, in accordance with due process of law. If, in the view of the person or firm taxed, the resettlement is unjust, Section 1104 provides for an appeal. Thus, it is superfluous to contend, as the appellant here contends, that no norms or standards have been laid down for the guidance of the Department in determining what accounts shall or shall not be reopened. The Department is equipped with personnel, trained and experienced in the discharge of this work. If they err, or if there is an abuse of power or discretion, the Courts are open for correction of the error or abuse.

The appellant flies a distress signal which is not justified by the realities of the situation. The power of the Department to make a resettlement is not abso-

lute; it is not unlimited. Resettlements may be effected only if the original settlement has been based on an improper valuation. This procedure does not work any injustice or hardship on the company since it knew at the time of the original settlement that a resettlement was possible any time within the following two years. The appellant in effect concedes that there was an error in the original valuation of the capital stock since it does not now contest the re-valuation figure of $4,250,000, reached by the Department.

With regard to the appellant's contention that while the Department may resettle a tax account because of clerical or mathematical error but not when it lacks information beyond what it had at the time of the original settlement, we quote with approval what the lower Court said: "However, the taxing officials did have before them at the time of making the resettlement new information consisting of the appellant's 1954 capital stock tax report and its corporate net income tax report; cf. Stip. Paragraphs 2 and 14. And, in addition thereto, the Board of Finance and Revenue had a stock prospectus when they refused to disturb the resettlement."

But we do not dispose of this aspect of the case on the quotation just given. Even if there were no additional information in the possession of the Department, a resettlement could still be authorized because whatever limitations existed in this respect prior to the amendment of Section 1105 in 1937* have now been eliminated. After an original settlement, the Commonwealth reserves for two years the unlimited right to

---

* The 1937 amendment to this section totally eliminated the requirement that the resettlement should be based upon the ground that the settlement was erroneous or illegal from accounts or other information in the Department's possession.

resettle. Always, of course, with the right on the part of the taxpayer to appeal if he believes that the resettlement is not according to law, and the judgment of the Court below is therefore affirmed.

Mr. Justice BELL dissents.