Commonwealth *v.* Central Railroad Company
of Pennsylvania, Appellant.

.420

Argued October 3, 1960. Before Jones, C. J., Musmanno, Jones, Cohen, Bok and Eagen, JJ.

reargument refused May 25, 1961.

*Roy J. Keefer,* with him *Hull, Leiby and Metzger,* for appellant.

*George W. Keitel,* Deputy Attorney General, with him *Anne X. Alpern,* Attorney General, for Commonwealth, appellee.

OPINION BY MR. JUSTICE COHEN, April 17, 1961:

This is an appeal from the decision of the Court of Common Pleas of Dauphin County sustaining the action of the Board of Finance and Review in refusing appellant's petition for resettlement of its capital stock tax, Act of June 1, 1889, P. L. 420, §§20, 21, as amended, 72 PS §§1871, 1901, 1902, for the year 1951.

Appellant, Central Railroad Company of Pennsylvania, a domestic corporation, operates a railroad, the tracks of which are solely within Pennsylvania. Appellant interchanges freight cars with connecting carriers as required by the Interstate Commerce Act of 1920, as amended, 49 U.S.C.A. §1, pars. 9-14 (1959), thereby promoting the rapid and efficient through movement of freight in contrast to the prior burdensome practice of transferring freight from cars of one railroad to the cars of another. Under the current "car service and per diem agreement" entered into by appellant and all other members of the Association of American Railroads, the owning railroad is paid a per diem rate of $1.75 for its freight cars while on the lines of other railroads.

Appellant also interchanges freight cars and diesel locomotives pursuant to an "operating agreement" with

the Central Railroad Company of New Jersey, a New Jersey corporation which has no trackage in Pennsylvania. Appellant and the Central Railroad of New Jersey run regularly scheduled trains between Pennsylvania and New Jersey.

In its capital stock report for 1951, appellant claimed that an average proportionate value of its diesel locomotives and freight cars which were employed on lines of other railroads outside of Pennsylvania were not subject to the capital stock tax. The settlement of appellant's tax did not allow such claim. Resettlement and review of the settlement were refused and an appeal to the Court of Common Pleas of Dauphin County followed.

The case was tried without a jury and most of the facts were contained in a stipulation. Thereafter the case was argued before the court en banc which entered a judgment nisi. The appellant filed exceptions which, on final judgment, were overruled by the court. This appeal followed.

Appellant maintains that the commerce clause of the Federal Constitution and the due process of the laws provision of the Federal and Pennsylvania Constitutions are violated by the unapportioned capital stock tax imposed on appellant's diesel locomotives and freight cars. The tax as settled against appellant is similarly attacked as violating uniformity of taxation and equal protection of the laws.

The Pennsylvania capital stock tax is a tax upon the actual value of the capital stock of a domestic corporation as represented by its property and assets: *Commonwealth v. Southern Pennsylvania Bus Company*, 339 Pa. 521, 15 A. 2d 375 (1940). Since the Commonwealth does not have power to tax tangible property located beyond its jurisdiction, so much of the value of the capital stock as is represented by such

property is exempt from the tax: *Delaware, Lackawanna and Western Railroad Company v. Pennsylvania,* 198 U. S. 341 (1905). Thus, we must ascertain whether Pennsylvania has jurisdiction to impose an unapportioned tax on all of appellant's rolling stock.

Although the commerce clause has long been considered to be a limitation upon the power of the states to tax an instrumentality of commerce, the law has evolved to a point where the states are not unduly restrained by that doctrine in their efforts to tax instrumentalities of commerce. As the United States Supreme Court recently stated in *Braniff Airways, Inc. v. Nebraska State Board of Equalization and Assessment,* 347 U. S. 590 (1954) : "While the question of whether a commodity en route to market is sufficiently settled in a state for purpose of subjection to a property tax has been determined by this Court as a Commerce Clause question, the bare question whether an instrumentality of commerce has tax situs in a state for the purpose of subjection to a property tax is one of due process." 347 U. S. at 598, 599. And due process considerations do not necessarily prohibit the domiciliary state from taxing a corporation's personal property which is located outside the state. See *Greenough v. Tax Assessors,* 331 U. S. 486, 491 (1947). Where, however, the particular property has a tax situs outside of the domiciliary state it would be a violation of due process for the domiciliary state to tax the property at full value since ". . . there would be multiple taxation of interstate operations and the tax would have no relation to the opportunities, benefits, or protection which the taxing state gives those operations." *Standard Oil Company v. Peck,* 342 U. S. 382, 384, 385 (1952).

The crucial issue for our determination therefore is whether any of appellant's freight cars and diesel locomotives obtained a tax situs outside this Common-

wealth. In order to determine this issue we must review the cases which have considered the question of tax situs in respect to the rolling stock of railroads, vessels of shiplines and, most recently, the flight equipment of airlines.

The continuous and constant use of a portion of a railroad's rolling stock in a non-domiciliary state has been upheld as constituting a tax situs for that portion. In *Pullman's Palace Car Company v. Pennsylvania,* 141 U. S. 18 (1891), Pennsylvania was permitted to impose its capital stock tax on pullman cars traveling on fixed routes and schedules within this jurisdiction. The tax was apportioned on the basis of a mileage traveled or operated ratio. There the court stated that although particular cars may not remain within the state, ". . . the Company has at all times substantially the same number of cars within the State, and continuously and constantly uses there a portion of its property. . . ."

Similarly in *American Refrigerator Transit Co. v. Hall,* 174 U. S. 70 (1899), the court sustained a Colorado property tax against an Illinois corporation which leased refrigerator cars to shippers and carriers throughout the nation. The average number of cars "permanently located" within Colorado was held subject to the tax.

In *Union Refrigerator Transit Co. v. Lynch,* 177 U. S. 149 (1900), the Supreme Court sustained a Utah property tax on an average number of refrigerator cars determined under facts similar to those in *American Refrigerator Transit Co. v. Hall,* supra.

The Supreme Court first ruled on the power of the domiciliary state to tax the full value of rolling stock in the case of *Union Refrigerator Transit Co. v. Kentucky,* 199 U. S. 194 (1905). There Kentucky, the domiciliary state, attempted to levy personal property

taxes on the rolling stock (refrigerator cars) of the Union Refrigerator Transit Company. During the years involved, the cars were rented to shippers who took possession of the cars in *Wisconsin* and used them in Canada and Mexico as well as throughout the United States. The court held that Kentucky could not tax the cars since they were "permanently located" in other states.[1]

*New York Central Railroad & Hudson River Company v. Miller,* 202 U. S. 584 (1906), similarly dealing with the taxing power of the domiciliary state, was decided the next year. There the railroad was a domestic corporation owning or hiring lines without as well as within the state, having arrangements with other carriers for through transportation, routing and rating and sending its cars to points without as well as within the state, and over other lines as well as its own. By the familiar course of railroad business a considerable proportion of the taxpayer's cars were constantly out of the state, and upon this ground the taxpayer contended that the proportion should be deducted from its entire capital, in order to find the capital stock employed within the state. In deciding that New York could tax all of the railroad's property at full value the court stated, ". . . [i]n the present case, however, it does not appear that any specific cars or any average of cars was so continuously in any other state as to be taxable there. The absences relied on were not in the course of travel upon fixed routes, but random excursions of casually chosen cars, determined by the varying orders of particular shippers and the arbitrary

---

[1] Permanent absence of a particular piece of railroad rolling stock has never been a requisite for exemption from taxation by the domiciliary state. See Note 5 in the dissenting opinion of Mr. Chief Justice STONE in *Northwest Airlines v. Minnesota,* 322 U. S. 292 (1944), for a discussion of this issue.

convenience of other roads. . . ."[2]    202 U. S. at 597, 598.

The rules of law to be extracted from the aforementioned railroad cases are, in our opinion, determinative of the issues before this court. Railroad rolling stock which travels in interstate commerce upon fixed routes and regular schedules cannot be taxed at full value by the domiciliary state since it has acquired a tax situs elsewhere. On the other hand, freight cars which are indiscriminately interchanged with those of other railroads and which do not run on fixed routes and regular schedules, do not, although a certain average number may be present in another state, acquire a tax situs outside the domiciliary state.

Both parties to this appeal nevertheless maintain that subsequent Supreme Court decisions have altered the above rules. We do not agree.

In *Johnson Oil Refining Co. v. Oklahoma ex rel. Mitchell*, 290 U. S. 158 (1933), the court ruled that Oklahoma could not levy an unapportioned tax upon 100% of the rolling stock of a refining company domiciled in Illinois. The ratio decidendi of the case was that the tank cars which made *regular* trips from the taxpayer's Oklahoma refineries to out-of-state purchasers acquired a proportionate tax situs in each state through which it passed on such trips. The *Johnson* case, supra, is in accord with the prior tank and refrigerator car cases and does not alter the holding in

---

[2] See *Commonwealth v. Union Pacific Railroad Company*, 214 Ky. 339, 283 S.W. 119 (1926), where the Supreme Court of Kentucky used comparable language when denying that Commonwealth the power to tax a non-domiciliary's freight cars which were running on the lines of a domestic railroad pursuant to an operating agreement. The Kentucky court distinguished the pullman, tank and refrigerator car cases on the issue of substantial profit received by the tank line and like companies for use of their cars when in a foreign state.

*New York Central Railroad & Hudson River Company v. Miller,* supra, in respect to the tax situs of freight cars which are freely and irregularly interchanged by cooperating railroads.

The more recent Supreme Court decisions deal with instrumentalities of commerce other than railroad cars.

In *Ott v. Mississippi Valley Barge Line Co.,* 336 U. S. 169 (1949), the Supreme Court departed from the traditional view that a vessel could be taxed only by the state of domicile and upheld the power of Louisiana to tax "an average portion of property [of a foreign corporation operating an interstate barge line,] permanently within the state." Shortly thereafter in *Standard Oil Co. v. Peck,* supra, the Supreme Court reconsidered the power of the domiciliary state to tax vessels at full value. There the tugboats and barges of an Ohio corporation were used on the Ohio and Mississippi Rivers where they moved regularly to and from Ohio and other points on the two rivers. Only a small part of the transportation was on waters within or bordering Ohio. The court found that, although no one vessel was continuously in another state during the taxable year, the boats and barges "were almost continuously outside of Ohio during the taxable year." The court denied the power of Ohio, the domiciliary state, to levy an unapportioned property tax on all of the boats and barges. It ruled that other states under *Ott v. Mississippi Valley Barge Line Co.,* supra, had the power to levy an apportioned tax on the vessels and that the existence of this power, whether exercised or not, precluded property taxation on all of the property by the domiciliary state.

The Supreme Court first considered property taxation of airlines in 1944. In *Northwest Airlines v. Minnesota,* 322 U. S. 292 (1944), the Supreme Court sustained a property tax assessed by Minnesota, the domi-

ciliary state, upon the entire value of a fleet of planes which were operated on regular routes and fixed schedules in Minnesota and seven of the Northwestern states. This case, heavily relied upon by the court below and the Commonwealth, must, however, be read in the light of two subsequent decisions. In *Standard Oil Co. v. Peck*, supra (1952), the court denied the power of the domiciliary state to tax the entire value of the boats and barges which were subject to apportioned property taxes by other states. And, when confronted with the power of a non-domiciliary state to assess a proportional property tax on the flight equipment of an airline, the Supreme Court in *Braniff Airways v. Nebraska State Board of Equalization and Assessment,* supra (1954), all but nullified the ruling in the *Northwest* case.

In *Braniff,* supra, the court sustained an apportioned personal property tax imposed by Nebraska, a non-domiciliary state, on the flight equipment of scheduled airlines. Braniff Airlines, Inc., the taxpayer in that case, made eighteen regular stops a day in Nebraska, rented ground facilities in that state and received one-tenth of its revenue from its Nebraska operations. The *Northwest* case, supra, was distinguished in *Braniff* on the ground that in *Northwest* there was no showing that the property had acquired a tax situs in states other than the domiciliary.

Thus, after reviewing the recent Supreme Court rulings, we must reject the contention that these rulings have changed the standards established for the taxation of railroad rolling stock.

Under those standards the diesel locomotives of the Central Railroad Company of Pennsylvania which continuously travel on fixed routes and schedules to and from New Jersey pursuant to the operating agreement with the Central Railroad of New Jersey have obtained

a tax situs in New Jersey and thus cannot be taxed for full value by this Commonwealth. Appellant's railroad freight cars (including those which may travel on the lines of the Central Railroad of New Jersey), which move irregularly and continuously about the country, being used interchangeably by other railroads while serving many shippers before returning to the state of domicile, do not attain the degree of continual and regularly scheduled presence which would enable other states, in accordance with due process, to tax them. Since the freight cars used pursuant to the car service and per diem agreement of the Association of American Railroads have not attained a tax situs outside of Pennsylvania it follows that Pennsylvania is not restrained by due process considerations in its effort to tax this property at full value.

Appellant, in addition, contends that the tax as settled against it violated uniformity of taxation and equal protection of the law. The essence of this argument is that other domestic railroad corporations whose tracks extend beyond this state were subjected to an apportioned capital stock tax settlement (based upon the percentage of total trackage in Pennsylvania) which included a proportion of their freight cars operating on the lines of other railroads outside of Pennsylvania, while appellant receives no exemption on its cars operating without the state on the lines of other railroads. This argument is devoid of merit since the classification was clearly reasonable. See *Commonwealth v. Fireman's Fund Ins. Company,* 369 Pa. 560, 565, 87 A. 2d 255 (1952).

Apportionment of railroad rolling stock based upon track mileage has been held to be a valid taxing standard where the lines of a domiciliary railroad corporation extend beyond the border of that state. See *Nashville, C. & St. L. Ry. v. Browning,* 310 U. S. 362 (1940).

Appellant obviously could not qualify for such apportionment since it does not have tracks without the state. The Commonwealth was clearly justified when it included freight cars on the lines of other railroads in the proportionate exemption from the capital stock tax of railroads that had tracks without as well as within Pennsylvania. Under the track mileage apportionment standard and the aforementioned tax situs rules for freight cars, such freight cars acquired a tax situs only in those states in which the tracks of the railroad were situated and this tax situs was based solely on the percentage of trackage in the particular state. That method of taxation is perfectly consistent with our holding in this case.

Judgment as modified is affirmed.