Commonwealth *v.* Philadelphia Market Street Subway-Elevated Railway Company, Appellant.

Argued May 21, 1962. Before BELL, C. J., MUS-
MANNO, COHEN, EAGEN and O'BRIEN, JJ.

*Robert R. Batt,* with him *D. V. Randall,* and *Hull,
Leiby & Metzger,* and *Ballard, Spahr, Andrews & Inger-
soll,* for appellant.

*Edward Friedman,* Deputy Attorney General, with
him *David Stahl,* Attorney General, for Commonwealth,
appellee.

OPINION BY MR. JUSTICE COHEN, September 25, 1962:
The Philadelphia Market Street Subway-Elevated
Railway Company, appellant, was originally incorpo-
rated as the Market Street Elevated Passenger Rail-
way Company for a period of 999 years under the Act
of June 7, 1901, P. L. 523, 67 P.S. §§1391, 1393-1394,
1396-1411. Its stock was thereafter purchased by the

Philadelphia Rapid Transit Company (P.R.T.) which controlled almost all of the street passenger railway companies in Philadelphia at the time but which, since it had no corporate power to operate a subway-elevated system, had to expand into the subway-elevated field of operation by purchasing stock of authorized companies rather than their franchises.

On January 19, 1903, appellant leased all of its properties except its corporate franchise to P.R.T. for 997 years beginning January 1, 1903, in return for a stated annual rental of 6% on the amount paid in for appellant's capital stock plus $250 a year for office expenses plus all taxes and license fees imposed upon appellant. The 6% rental on the $2,800,000 paid in for the capital stock produced a net rental of $168,000 a year to appellant.

By a supplemental agreement entered into between appellant and P.R.T. on July 1, 1907, this 6% annual rental was reduced to $1.00 a year. The impetus for this change, according to the record before us, came from a proposed contract between P.R.T. and the City of Philadelphia (City) under which the various franchises for use of the streets granted by the latter to the many street passenger railway companies to whose rights the P.R.T. had succeeded were consolidated, clarified and made uniform and under which the City was given the right to purchase all of P.R.T.'s properties on or after July 1, 1957. The rental reduction was designed to permit this acquisition without a heavy fixed rental charge being assumed by the City although it was not, apparently, made a condition in the contract itself.

This state of affairs has persisted substantially in the same form until the present. Although P.R.T. underwent extensive reorganization in the period between October 1, 1934, and January 1, 1940, and emerged as the present-day Philadelphia Transportation Company

360

(P.T.C.), its relationship with appellant has remained unchanged.

On March 9, 1955, appellant filed with the Pennsylvania Department of Revenue its capital stock tax report for the calendar year 1954. It declared a capital stock tax value of $1,000 and a tax liability of $5. On March 4, 1958, appellant's tax was settled by the Department at $10,000 based upon a value of $2,000,-000. Petitions for resettlement and review were subsequently refused, and an appeal to the Court of Common Pleas of Dauphin County resulted in the Commonwealth's being sustained in its valuation. This appeal followed.

Appellant contends (1) that the value of its capital stock is nominal because of the presence of the long-term lease of all of its properties at a nominal rental, and (2) that affirmance of the lower court's decision would result in double taxation. In its appeal to the lower court it also contended that the nearly three year delay in making settlement of its capital stock tax report contravened §801(b) of The Fiscal Code, Act of April 9, 1929, P. L. 343, 72 P.S. §801(b), and rendered the settlement void. However, it does not seem to have pressed this point in the court below and has not done so here; so we shall pass by this apparent and unexplained delay and regard the issue as abandoned by appellant.

Under the Act of June 1, 1889, P. L. 420, §21, as amended, 72 P.S. §1871(a) (Supp. 1961), appellant is required to make an annual payment to the Commonwealth of a tax at the rate of "five mills upon each dollar of the actual value of its whole capital stock." The tax is to be accompanied by a report setting forth information concerning the selling price of the taxpayer's stock during the year and the business operations and financial structure of the taxpayer. The report is also to include a valuation of the taxpayer's capital

stock at its actual value in cash at the close of the tax year as made by the officers of the taxpayer. This valuation is to be made after considering (1) the average selling price of the taxpayer's stock during the year; (2) the value indicated or measured by the taxpayer's net earnings or by the amount of profit made and either declared in dividends, expended in improvements or carried into surplus or a sinking fund; and (3) the actual value indicated or measured by the intrinsic value of the taxpayer's tangible property and assets and by the value of its good will, franchises and privileges, as revealed by the material results of their exercise, considering also the amount of the taxpayer's indebtedness. Act of June 1, 1889, P. L. 420, §20, as amended, 72 P.S. §§1901, 1902.

We have restated the pertinent statutory provisions at length because the present case occasions careful study of their meaning and a restatement of certain earlier determinations. It is apparent, of course, that under the facts present here no sales of appellant's stock have occurred during the tax year in question and no substantial earnings or profit either were or could be made. P.T.C.'s stock ownership of appellant and the 997 year lease between it and appellant have effectively placed beyond consideration the first two of the three statutory measures of value which the taxpayer's officers initially, and the Commonwealth in making settlement, must consider. This situation led the lower court to conclude that under such circumstances it was, nevertheless, proper to arrive at a value by considering the third measure of value. We agree with this conclusion for any other would lead either to the obviously improper exemption of appellant from any tax at all or to an equally improper imposition of tax without considering any of the statutory measures.

We have frequently pointed out that the capital stock tax is actually a tax upon the properties and as-

sets of a corporation: *Commonwealth v. Central Railroad Company of Pennsylvania,* 403 Pa. 419, 169 A. 2d 878 (1961); *Commonwealth v. Sunbury Converting Works,* 286 Pa. 545, 134 Atl. 438 (1926); *Commonwealth v. Fall Brook Railway Company,* 188 Pa. 199, 41 Atl. 606 (1898); and that valuation of the capital stock of a corporation is a matter of judgment, *Commonwealth v. Progress Manufacturing Company,* 389 Pa. 600, 133 A. 2d 814 (1957); *Commonwealth v. Pomeroy's, Inc.,* 344 Pa. 538, 26 A. 2d 197 (1942); *Commonwealth v. Pennsylvania Railroad Co.,* 297 Pa. 308, 147 Atl. 242 (1929). As these latter cases indicate, accounting figures are not determinative of valuation; and, as the court below correctly pointed out in an earlier decision, book values are not evidence of actual value for capital stock tax purposes. *Commonwealth v. Gimbel Brothers, Inc.,* 18 Dauph. 385 (Pa. 1915). The logical conclusions from this last principle are, first, that the $2,800,000 net book value of appellant's capital stock is not determinative of the issue and, second, that the absence of accounting methods by which the presence of a 997 year lease might be substituted on appellant's books for the leased properties and franchises does not prevent determination of actual value by considering such a substitution.

Thus, we arrive at the ultimate question here: what is the actual value of appellant's capital stock. In exercising the judgment required to make this decision, we are told by the statute to consider the intrinsic value of appellant's tangible property and of its assets and the value of its good will and franchises and privileges. We take this to mean that we are to ignore considerations which might affect value in other contexts but do not impinge directly upon the value of the asset itself, such as a temporary artificial market demand for a particular piece of tangible property or, as here, the presence of a $1.00 rental for property which is ob-

viously worth more than such a rental, standing alone, would indicate. Therefore, if the intrinsic value of appellant's properties and franchises, etc., is to be considered, it can lead only to the conclusion that the actual value of appellant's capital stock is more than the nominal value placed upon it by appellant's officers. In fact, we conceive from its brief that appellant itself would admit that the actual value of these assets is at least their book value.

However, appellant contends that the presence of the 997 year lease requires an entirely different consideration—i.e., that there has been a substitution of the tangible properties, etc. of the appellant by the lease itself and that, hence, the property to be valued is the property represented by the lease, that is, the right to rent and the reversionary interest. It claims these amounts respectively to be $938 and nothing (since the revision falls in at the same time appellant's corporate existence will cease). To support its contention in this respect it cites our decision in *Erie & Pittsburg Railroad Company v. Pennsylvania Railroad Company*, 208 Pa. 506, 57 Atl. 980 (1904).

The Erie and Pittsburg Railroad Company had leased all of its properties and franchises for a term of 999 years[1] to the Pennsylvania Railroad Company. One of the terms of the lease agreement was that the lessee (Pennsylvania RR) would pay all taxes imposed upon the property demised. The lessor (Erie & Pittsburg RR) brought suit against the lessee seeking to recover capital stock taxes paid by the lessor, stating that the tax was one upon lessor's property and franchises and thus payable by the lessee under the covenant in the lease. We affirmed *per curiam* the decision of the low-

---

[1] The term appears in the record of the case but not in our opinion.

er court against the lessor and adopted the opinion of the lower court.

In its opinion that court held that the property and assets of the lessor which were subject to capital stock tax after execution and delivery of the lease were no longer the real and personal tangible properties and the franchises demised by the lessor to the lessee, but rather were the fixed return in rentals and the reversion, and that it was the latter which must be considered in arriving at the value of the lessor's capital stock. Since lessee had covenanted to pay taxes only upon the property demised, this promise did not include the property taxed for capital stock tax purposes.

The Commonwealth in its brief here attempts to meet this holding with several arguments, all, we believe, unavailing. First, it says appellant interprets the *Erie* case to hold that a long term lease of all the properties of a company leaves that company with no property to be considered in determining its capital stock tax liability. This is not so. Appellant contends only what the court actually stated in *Erie*: that a long term lease of all the physical properties and the franchises of a company works a substitution of the property which is to be considered. Second, it contends that a holding that the physical properties and franchises so leased are no longer the property of the lessor would immunize these properties from capital stock taxation. Nor is this necessarily so for the properties would be property of the lessee for tax purposes; and if lessee is a domestic corporation, capital stock tax would be imposed thereon. Third, the Commonwealth argues that regardless of the *Erie* case, appellant here considers itself the owner of the leased properties since it carries them on its books at a net value of $2,800,000. As we have pointed out above, the books of a taxpayer are not evidence of value itself. Similarly, because accounting devices have not been developed

to reflect this lease transaction, we are not justified in ignoring the actualities of the situation. We look beyond what the books reflect to determine what property is to be valued.

Finally, the Commonwealth points to the record in the *Erie* case as revealing payment of substantial amounts of capital stock tax annually by the lessor and implies that this reveals surely that the properties and franchises were being taxed to lessor. This, too, is not necessarily so and apparently was not so. A substantial tax may result from considering the value of the rentals and reversion as well as that of the physical properties and franchises; and while the Commonwealth overlooks this point, its significance also appears to have been lost upon the appellant as well. Even if there is a true substitution of properties in a case like the present one and even if the actual rental is nominal so that a net earnings factor cannot be considered (as it could have been in *Erie*), consideration of the intrinsic value of the appellant's assets requires a judgment as to the true value to a taxpayer of a right to reasonable rentals and of a reversion unencumbered by the action of the parties in setting a rental of $1.00.

The court below chose to ignore the lease here because it was between a parent and wholly-owned subsidiary and, thus, was not at arm's length. We do not deem this relationship controlling on the question here. The same principles of valuation would apply where two wholly unrelated corporations enter into a long term lease of valuable properties at a nominal rental. Consideration of intrinsic value requires that the nominal rental be ignored in either case. Moreover, the court below, in considering intrinsic value, stated as follows: "However, the intrinsic value of the defendant's tangible property and assets, as carried on its own books, amounts to $2,800,000." We discern in this statement a reliance by the lower court on book values

despite what has been said to the contrary. For these reasons the case must be remanded so that a proper consideration may be given on the basis of the principles stated here.

In order to complete our consideration of the questions raised on appeal, however, we must dispose of appellant's contention that double taxation results from the lower court's decision since the properties are taxed both to appellant and to its parent, P.T.C. The facts seem to be as follows. In its capital stock tax report for 1954 P.T.C. reported a taxable proportion of $73,347,888 over $74,696,345. The denominator was determined by subtracting from the net book value of its assets the *book* value of appellant's stock—$2,800,-000—and of stock of other subsidiaries and by adding to the remainder the claimed *actual* value of appellant's stock—$1,000—and of stock of the other subsidiaries. The numerator was then determined by subtracting from this value of the total assets the value of exempt assets—here, the claimed actual value of P.T.C.'s Pennsylvania subsidiaries and the value of United States securities held by P.T.C. The resulting fraction was then applied to the claimed capital stock valuation of $7,500,000 to determine the value subject to tax.

The Commonwealth, in settling the P.T.C.'s capital stock tax liability, arrived at a taxable proportion of $73,347,888 over $78,045,345. The difference in the denominator was the result of ascribing an actual value of $2,000,000, not $1,000, to appellant's stock and by making similar changes in the actual value of the stock of the other subsidiaries. The result of the settlement was obviously to relieve a greater proportion of P.T.C.'s capital stock from tax liability than the P.T.C. itself had claimed. While the Commonwealth eventually resettled the tax liability on a valuation ($10,000,-000) higher than that claimed by the P.T.C., use of P.T.C.'s fraction would have produced an even larger tax.

Appellant seemingly complains, however, that use of an actual value of $2,000,000 in determining the taxable proportion means that this amount of value is taxed both to appellant and to P.T.C. It then asserts that elimination of this $2,000,000 from the numerator of the taxable proportion eliminates only $1,281 in tax from P.T.C.'s tax liability whereas appellant pays a tax of $10,000 on this amount, thus causing double taxation to the extent of $8,719. The fallacies in appellant's position are fundamental. First, nothing in the record indicates at what values assets were actually considered in arriving at P.T.C.'s settled capital stock valuation itself. The Commonwealth's brief states that the net book equity shown on P.T.C.'s capital stock tax return was $33,233,818 and that this included appellant's capital stock at its book value of $2,800,000. Therefore, argues the Commonwealth, the final settlement at a value of $10,000,000, or at about 30% of book value means that the $10,000 of tax claimed to be exacted from P.T.C. because of the inclusion of appellant's stock in P.T.C.'s value is really only $3,000 and the possible double taxation amounts to only $1719. We imagine that the Commonwealth really meant to say that the percentage reduction applies to the $2,800,000 of book value of appellant's stock, thus, reducing it to $840,000 in P.T.C.'s valuation and producing a tax value, after applying the apportionment fraction, of about $787,000. This, in turn, would produce an added tax of $3,935 and possible double taxation of $2,654.

The actual figures are unimportant; however, they demonstrate one fallacy in appellant's reasoning. Even more destructive to its argument is the fact that it is not appellant, but P.T.C., who might argue double taxation under the facts shown; and P.T.C. has acquiesced in the determination of its tax for 1954. Appellant has no cause to complain of what happened in the settlement of P.T.C.'s tax, there being no question that it

368

is taxable on its own capital stock value. We, therefore, find no issue of double taxation here.

To summarize, we conclude, under the facts present here, that the property and assets which underlie appellant's capital stock are the reasonable rentals and the reversion for and in the physical properties and franchises leased for the tax year involved; that it is these underlying assets which must be considered in arriving at a value of appellant's capital stock; that in considering them attention should be paid to all factors which might affect their value; that the presence of a nominal rental is irrelevant but that appellant would be entitled to show, if the facts so indicate, that the actual value, nevertheless, is nominal or even negative (if, for example, the reasonable rental for the properties and franchises would be nominal because the properties can be operated only at a loss); and that there is no double taxation involved in taxing appellant on this basis and the P.T.C. as the actual owner of the physical properties and franchises.[2]

The judgment of the court below is vacated and the case remanded for further proceedings consistent herewith.

---

[2] P.T.C. must also include in its tax base, of course, the value of appellant's capital stock; however, it would continue to treat this asset as an exempt one in computing its taxable proportion. Also, the effect of having to include the actual properties in its tax base while appellant is taxed on a capitalized value of the lease is offset by considering that P.T.C. has a real rental obligation equal in value to this capitalized value and should have its tax base correspondingly adjusted.