BRENNAN, J.T.C.
This is the court’s opinion with respect to the parties’ cross-motions for summary judgment. Plaintiff, an electric company, raises several issues relating to Defendant’s determination of Plaintiffs Corporation Business Tax (CBT) obligations for tax years 1999 and 2000.
The issues before the court are: (1) whether the Pennsylvania Gross Receipts Tax must be included as part of Plaintiffs entire net income when calculating its New Jersey CBT liability; (2) whether, the Pennsylvania Capital Stock Tax must be included as part of Plaintiffs entire net income when calculating its New Jersey CBT liability; and (3) if the Pennsylvania Gross Receipts Tax and/or the Pennsylvania Capital Stock Tax must be included as part of entire net income, does New Jersey’s CBT statute violate the Commerce Clause.
*131 For the reasons explained more fully below, the court concludes that Plaintiffs CBT obligations to the State of New Jersey do not require Plaintiff to include Pennsylvania Gross Receipts Tax and Pennsylvania Capital Stock Tax in entire net income when calculating its New Jersey CBT liability.
I. Findings of Fact and Procedural History
The court makes the following findings of fact based on the submissions of the parties on their cross-motions for summary judgment. R. 1:7-4.
Plaintiff, PPL Electric Utilities Corporation (PPL) is a Pennsylvania corporation in the business of selling and distributing electricity. For the tax years ending December 31, 1999 and December 31, 2000, PPL maintained its principal place of business in Allentown, Pennsylvania and was subject to various taxes in multiple states, including Pennsylvania and New Jersey.
In determining its federal taxable income for 1999 and 2000, PPL deducted taxes, net of refunds and other adjustments, of $176,974,508 and $165,414,009, respectively. The deducted taxes included taxes based on income or profit such as the Pennsylvania Corporate Income Tax; the New Jersey Corporation Business Tax (CBT); and similar income taxes paid to Washington D.C., Maine and Montana. Also deducted were non-income or profit based taxes which included the Pennsylvania Gross Receipts Tax and the Pennsylvania Capital Stock Tax.
When preparing its 1999 and 2000 New Jersey CBT returns, PPL determined its entire net income by adding-back its entire federal deductions for state income taxes of $26,993,165 for 1999 and $20,938,624 for 2000 as required by N.J.S.A. 54:10A-4(k)(2)(C), more commonly known as the Add-Back Statute. PPL did not add-back the deductions for the Pennsylvania Gross Receipts Tax and the Pennsylvania Capital Stock Tax as it did not believe that these taxes were subject to the Add-Back Statute.
In 2004, Director, Division of Taxation (Taxation) audited PPL’s CBT returns for tax years 1999 and 2000, and increased PPL’s entire net income by adding-back PPL’s federal deduction for the Pennsylvania Gross Receipts Tax and the Pennsylvania Capital *132 Stock Tax in the amount of $114,880,580 for 1999 and $128,933,053 for 2000. This resulted in PPL having additional CBT liability.
Taxation then issued a Notice of Assessment Related to Final Audit Determination (Notice) dated May 23, 2005, confirming the adjustments. The Notice advised that PPL was required to add-back the Pennsylvania Gross Receipts and the Pennsylvania Capital Stock taxes pursuant to N.J.S.A. 54:10A-4(k)(2)(C). PPL did not administratively protest the Notice or appeal the same to the Tax Court.
On August 29, 2006, PPL paid the audited assessment in the amount of $182,446.73 and filed a refund claim seeking the additional CBT taxes resulting from the add-back of the Pennsylvania Gross Receipts Tax and the Pennsylvania Capital Stock Tax. On September 18, 2006, Taxation denied the refund claim. On November 20, 2006, PPL administratively protested the refund denial. On October 7, 2010, Taxation issued a Final Determination upholding the denial. Taxation confirmed its findings by letter dated October 10, 2010.
On January 6, 2011, PPL filed the instant Complaint; Taxation subsequently filed an Answer on April 11,2011.
II. Legal Analysis
A. Summary Judgment
Summary judgment should be granted where “the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.” R. 4:46-2(c). In Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523, 666 A.2d 146 (1995), our Supreme Court established the standard for summary judgment as follows:
[W]hen deciding a motion for summary judgment under Rule 4:46-2, the determination whether there erists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
*133 “The express import of the Brill decision was to ‘encourage trial courts not to refrain from granting summary judgment when the proper circumstances present themselves.’ ” Township of Howell v. Monmouth County Bd. of Taxation, 18 N.J.Tax 149, 153 (Tax 1999) (quoting Brill, supra, 142 N.J. at 541, 666 A.2d 146).
The court concludes that this matter is ripe for decision by summary judgment. There are no material facts in dispute between the parties relevant to PPL’s CBT obligations for the relevant fiscal years. The court is presented with pure questions of statutory interpretation which can be determined by application of the law to the undisputed facts. To begin its analysis, the court must first review the applicable statutory authorities in both New Jersey and Pennsylvania.

New Jersey Corporation Business Tax (CBT) and the Addr-Back Statute

New Jersey’s CBT Act taxes each non-exempt domestic corporation and foreign corporation:
[F]or the privilege of having or exercising its corporate franchise in this State, or for the privilege of deriving receipts from sources within this State, or for the privilege of engaging in contacts with this State, or for the privilege of doing business, employing or owning capital or property, or maintaining an office, in this State.
N.J.S.A. 54:10A-2.
When calculating CBT, a corporation’s entire net income is the “total net income from all sources, whether within or without the United States, and shall include the gain derived from the employment of capital or labor, or from both combined, as well as profit gained through a sale or conversion of capital assets.” N.J.S.A. 54:10A-4(k).
This broad definition of entire net income is then limited in the following paragraph of the statute:
For the purpose of this act, the amount of a taxpayer’s entire net income shall be deemed prima facie to be equal in amount to the taxable income, before net operating loss deduction and special deductions, which the taxpayer is required to report ... to the United States Treasury Department for the purpose of computing its federal income tax....

[Ibid.]

*134 Accordingly, entire net income is linked to line twenty-eight of the federal corporate income tax return, which is entitled “Taxable income before net operating loss deduction and special deductions.”
Furthermore, the statute provides that “[ejntire net income shall be determined without the exclusion, deduction or credit of’ and lists more than a dozen exceptions — both additions and subtractions — to federal tax statutes that define federal taxable income. See N.J.S.A. 54:10A-4(k)(2)(A) through (J). The statute also contains various subsections refining the calculation of an entity’s entire net income for CBT purposes.
The CBT Act also requires that a corporation’s federal taxable income be adjusted to include the add-back of certain deducted state taxes, specifically:
[t]axes paid or accrued to the United States, a possession or territory of the United States, a state, a political subdivision thereof, or the District of Columbia, or to any foreign country, state, province, territory or subdivision thereof, on or measured by profits or income, or business presence or business activity, or the tax imposed by this act ...
N.J.S.A. 54:10A-4(k)(2)(C).
The current version of the Add-Back Statute reflects amendments enacted in 1993 to rectify an inequity. Prior statutes only required the add-back of New Jersey CBT; similar income or profit-based taxes imposed by other states were not required to be added-back. As a result, corporations conducting business solely in New Jersey had to add-back all of their CBT taxes to calculate entire net income; however, corporations that conducted business in both New Jersey and other states only had to add-back the New Jersey CBT but not other state income taxes.
This system allowed “corporations which do business in several states [to] pay a lower effective rate of tax on their New Jersey activities than do corporations which only do business in New Jersey.” Assembly Appropriations Committee Statement, A. 273 and A 1870, L. 1993, c. 173 (June 3, 1993). The result was that New Jersey-only taxpayers were taxed at a higher tax basis than similarly situated multi-state taxpayers. In 1993, the statute was amended to cure this inequity by eradicating the tax rate discrimi *135 nation against New Jersey corporations with solely in-state activity and disallowing the deduction for the taxes equivalent to the CBT imposed by other jurisdictions. Ross Fogg Fuel Oil Co. v. Director, Div. of Taxation, 22 N.J.Tax 372 (Tax 2005). The 1993 amendment “capture[d] out-of-state income that had not previously been subject to the add-back.” Ibid, at 378. In other words, the inequity was corrected by requiring multi-state taxpayers to add-back state taxes similar to that of the CBT.

Pennsylvania’s Corporate Income Tax, Gross Receipts Tax, and Capital Stock Tax

Pennsylvania imposes a corporate income tax similar to the New Jersey CBT. The Pennsylvania Corporate Income Tax is imposed on both domestic and foreign corporations for the privilege of doing business, carrying on activities, having capital or property employed or used in Pennsylvania, or owning property in Pennsylvania. 72 P.S. 7402; Daniel Meuser, Pennsylvania Department of Revenue, The Tax Compendium at 4 (October 2012). The Pennsylvania Department of Revenue explains that the Pennsylvania Corporate Income Tax:
.. .is levied on federal taxable income, modified by certain additions and subtractions. To arrive at Pennsylvania taxable income, all taxes imposed on or measured by net income which are deducted on the federal income tax return are added-back, while the foreign dividend gross-up and net interest income and gains on United States government securities are deducted.

[Ibid.]

The Pennsylvania Gross Receipts Tax is paid by both electric distribution companies and electric generation suppliers on the basis of the company’s gross receipts from the sale of electric generation supply within Pennsylvania. 72 P.S. 8101(b) explains that:
Every electric light company, waterpower company and hydro-electric company now or hereafter incorporated or organized by or under any law of this Commonwealth, or now or hereafter organized or incorporated by any other state or by the United States or any foreign government and doing business in this Commonwealth, and every limited partnership, association, joint-stock association, copart-nership, person or persons, engaged in electric light and power business, waterpower business and hydro-electric business in this Commonwealth, shall pay to the *136 State Treasurer, through the Department of Revenue, a tax of forty-four mills upon each dollar of the gross receipts ...
Sales for resale are not taxed. 72 P.S. 8101(b)(1).
In Transcontinental Gas Pipe Line Corp. v. Commonwealth, 153 Pa.Cmwlth. 60, 620 A.2d 614 (1993), aff'd. 157 Pa.Cmwlth. 674, 630 A.2d 960 (1993) the Court contrasted gross receipts taxes with discriminatory flat fee taxes and explained:
The gross receipts tax operates upon each sale and is not related to the privilege of doing some business threshold or a minimum business as would a license or flat fee levy. The tax due is directly related to the extent of the taxable occurrences in Pennsylvania. If no taxable receipts from sales are generated, then no tax is due.
Id. at 71, 620 A.2d 614.
A gross receipts tax is not a charge by the state to the consumer; rather, it is levied on the seller or supplier. Like any other expense, the seller may pass this on to the purchaser as part of the price charged for this service. Accordingly, the Pennsylvania Gross Receipts Tax gets passed through to the consumer and is considered to be part of the revenue base against which the gross receipts tax is calculated. It is common practice for electricity suppliers to use an adjusted rate to ensure they are billing the appropriate revenue to cover business costs.[1]
The Pennsylvania Capital Stock Tax is imposed on companies with capital stock, joint-stock associations, limited liability companies, business trusts, and all other entities classified as corporations for federal income tax purposes that were formed in or do business in Pennsylvania (72 P.S. 7602). The tax is computed by multiplying the capital stock value of the entity times the capital stock tax rate.[2] The tax is imposed on a corporation’s capital *137 stock value, as derived according to the following statutory formula: the product of one-half the sum of (A) the five year average net income capitalized at the rate of 9.5%; plus (B) 75% of net worth from which product shall be subtracted $160,000. 72 P.S. 7601(a).
III. Application of the Law
The court’s analysis is influenced by the familiar principle that Taxation’s interpretation of tax statutes is entitled to a presumption of validity. “Courts have recognized the Director’s expertise in the highly specialized and technical area of taxation.” Aetna Burglar & Fire Alarm Co. v. Director, Div. of Taxation, 16 N.J.Tax 584, 589 (Tax 1997) (citing Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 327, 478 A.2d 742 (1984)). The scope of judicial review of Taxation’s decision with respect to the imposition of a tax “is limited.” Quest Diagnostics, Inc. v. Director, Div. of Taxation, 387 N.J.Super. 104, 109, 903 A.2d 442 (App.Div.), certif. denied, 188 N.J. 577, 911 A.2d 69 (2006). The Supreme Court has directed the courts to accord “great respect” to Taxation’s application of tax statutes, “so long as it is not plainly unreasonable.” Metromedia, supra, 97 N.J. at 327, 478 A.2d 742. See also GE Solid State, Inc. v. Director, Div. of Taxation, 132 N.J. 298, 306, 625 A.2d 468 (1993) (“Generally, courts accord substantial deference to the interpretation an agency gives to a statute that the agency is charged with enforcing.”). However, judicial deference is not absolute. An administrative agency’s interpretation that is plainly at odds with a statute will not be upheld. See Oberhand v. Director, Div. of Taxation, 193 N.J. 558, 568, 940 A.2d 1202 (2008) (citing GE Solid State, supra, 132 N.J. at 306, 625 A.2d 468); Advo, Inc. v. Director, Div. of Taxation, 25 N.J.Tax 504, 511 (Tax 2010).
It is undisputed that the Pennsylvania Corporate Income Tax is a tax that the New Jersey Legislature intended to have added-back to entire net income for CBT purposes when it amended the *138 Add-Back Statute in 1993. The parties agree that in 1999 and 2000 PPL added the federal deduction for that tax back to its federal taxable income to calculate its entire net income for New Jersey CBT purposes. It is the non-income or profit based taxes that are in dispute.
Taxation’s position that PPL must also add-back the Pennsylvania Gross Receipts Tax is based on the argument that the Pennsylvania Gross Receipts Tax is a franchise tax imposed for the privilege of doing business in the state of Pennsylvania. Taxation points to 72 P.S. 8101(b), which levies the gross receipts tax on every person “engaged in [the] electric light and power business” in Pennsylvania. Taxation suggests that it is really a franchise tax, and as such, it should be added-back to entire net income for CBT purposes.
The court disagrees and finds that the Pennsylvania Gross Receipts Tax is an excise tax and not a franchise tax. The tax is imposed on the gross receipts of the sales of the commodity of electric energy. Unlike an income tax or business presence tax, the Pennsylvania Gross Receipts Tax is levied, determined and calculated according to the actual sale of electricity in Pennsylvania. It is based solely on the amount of electricity sold, regardless of whether income or profit is realized from such sales and not based upon the taxpayer’s business presence or business activity in Pennsylvania.
Furthermore, the tax is passed through to the ultimate consumer of electricity.[3] As such it closely resembles the New Jersey *139 Petroleum Gross Receipts Tax discussed in Ross Fogg Fuel Oil Co., supra, 22 N.J.Tax 372. In that case, the Tax Court found that the New Jersey Petroleum Gross Receipts Tax was not a tax measured by income, profits, business presence, or activity because it was based on the gross receipts of petroleum products sold in New Jersey.
The Ross Fogg analysis equally applies to the Pennsylvania Gross Receipts Tax; therefore, the court finds that as an excise tax and therefore it need not be added-back to determine PPL’s entire net income for CBT purposes.
Taxation also argues that PPL should have added-back the Pennsylvania Capital Stock Tax stating .that it is a tax on or measured by profits or income, or alternatively, based on business presence or business activity. PPL counters that it is a property tax and therefore not subject to the Add-Back statute.
This court finds that the Pennsylvania Capital Stock Tax is a property tax. The court’s finding is influenced by the relevant Pennsylvania and United States Supreme Court cases.
In Central Railroad Co. v. Pennsylvania, 370 U.S. 607, 609 n. 1, 82 S.Ct. 1297, 8 L.Ed.2d 720 (1962) the United States Supreme Court explained that the tax imposed by 72 P.S. 7602 is labeled a ‘capital stock tax,’ but noted it “has been construed by the Pennsylvania courts as being the equivalent of a property tax.” The Central Railroad Court also stated that the practical effect of 72 P.S. 7602 “amounts to a tax upon the specific property which gives the added value to the capital stock.” Ibid.
Additionally, Pennsylvania courts have held that the Capital Stock Tax resembles a property tax. Commonwealth v. Columbia Gas & Elec. Corp., 336 Pa. 209, 226, 8 A.2d 404 (1939); Commonwealth v. Southern Pennsylvania Bus. Co., 339 Pa. 521, 528, 15 A.2d 375 (1940). Pennsylvania courts have explained that “[ujnder Pennsylvania tax law, domestic corporations pay a tax on the value of their capital stock ... [t]his is a property tax on the corporation.” Tool Sales & Service Co., Inc. v. Commonwealth, 536 Pa. 10, 15, 637 A.2d 607 (1993).
*140 The court in Tool Sales & Services discussed changes in the statutory scheme for calculating the value of the stock tax and stated:
Under Pennsylvania tax law, domestic corporations pay a tax on the value of their capital stock. See generally, 72 Pa.C.S.A. § 7602 (1990). This is a property tax on the assets of the corporation, not an income tax on the corporation. See Commonwealth v. Philadelphia Market Street Subway-Elevated Railway Co., 408 Pa. 357, 184 A.2d 483 (1962). The value of a corporation’s capital stock is determined according to a method set by statute. Prior to 1984, the Pennsylvania [17] Capital Stock Tax was levied on the appraised value of the corporation’s capital stock, which was calculated by taking into consideration the following: (i) the average selling price of the stock; (ii) the corporation’s earnings; (iii) the dividends declared; and (iv) the stockholder equity. See 61 Pa.Code 155.22. The calculation of a corporation’s capital stock value was done on a case by case basis considering each of the four elements. See, e.g., Market Street Subway, 408 Pa. at 357 [184 A.2d 483],
For fiscal years beginning in 1984, the General Assembly adopted a fixed formula to determine the value of a corporation’s capital stock. Under this new formula, capital stock value is determined by a corporation’s average net income and its net worth.
Id. at 17, 637 A.2d 607.
The Pennsylvania Capital Stock Tax is calculated by multiplying the sum of the taxpayer’s average accumulated book income over five years, plus the taxpayer’s net worth, by a prescribed rate. 72 P.S. 7602(a). The average book income component can include losses for a particular year. Net worth is defined as the sum of the taxpayer’s issued and outstanding capital stock, surplus and undivided profits as per books set forth on the taxpayer’s federal income tax return. 72 P.S. 7601(a). Taxpayers determine the portion of their capital stock value taxable by Pennsylvania by multiplying that value by either a single exempt assets factor or a three-factor apportionment formula. 72 P.S. 7602.[4]
*141 The Pennsylvania capital stock formula calculates the value of the stock by using average net income. Mere use of income in measuring the value of the stock does not require the capital stock tax to be added-back. The use of average net income is simply a means of measuring the value of capital stock.
Furthermore, N.J.A.C. 18:7-8.7(f) explains that “property taxes, excise taxes (for example cigarette taxes), payroll taxes, and sales taxes are not considered “business presence” or “business activity” taxes”. New Jersey Regulations state that “[pjroperty taxes ... are not considered ‘[b]usiness presence’ or ‘business activity taxes” and should therefore be excluded from the denominator of the sales fraction. N.J.A.C. 18:7-8.7(f). Therefore, as a property tax, PPL does not have to add-back the Pennsylvania Capital Stock Tax when determining entire net income.
An analysis of the Legislative intent of the 1993 amendment further supports this finding. The 1993 amendment does not require multistate taxpayers to add-back all taxes. In fact, the amended statute specifically limits taxes to those “measured by profits or income, or business presence or business activity.” N.J.S.A. 54:10A-4(k)(2)(C). The 1993 amendment was passed because previously, solely New Jersey taxpayers were taxed on a higher tax basis than similarly situated multi-state taxpayers. The Legislature amended the statute to cure the inequity. Here, Taxation’s interpretation of the statute discriminates against mul-ti-state taxpayers because they would be required to add-back the Pennsylvania Corporate Income Tax as well as other non-CBT type taxes imposed by other states, such as the Pennsylvania Gross Receipts Tax and the Pennsylvania Capital Stock Tax, while solely New Jersey taxpayers are only required to add-back CBT *142 type taxes. This court finds that the Legislature did not intend to cure one inequity by imposing another.
IV. Conclusion
The Pennsylvania Gross Receipts Tax and the Pennsylvania Capital Stock Tax are not taxes on or measured by profit or income, or business presence or business activity. The Pennsylvania Gross Receipts Tax is an excise tax because it is measured by PPL’s sales of electricity. The Pennsylvania Capital Stock Tax is a property tax as it is measured by the value of PPL’s assets. Therefore the calculation of PPL’s entire net income does not require Pennsylvania Gross Receipts Tax or Pennsylvania Capital Stock Tax to be added-back to federal taxable income.
Given this court’s finding that the Add-Back Statute does not require either the Pennsylvania Gross Receipts Tax or the Pennsylvania Capital Stock Tax to be added-back when calculating a taxpayer’s entire net income for CBT purposes, this Court need not further examine whether Taxation’s application of the Add-Back Statute violates the Commerce Clause.
The court hereby grants PPL’s motion for summary judgment and denies the Director, Division of Taxation’s cross-motion for summary judgment.

 See Pennsylvania Department of Revenue Letter Opinion No, SUT-03-052 issued October 7, 2003 finding that separately stated utilities gross receipts tax made in conjunction with the sale of taxable electricity are included in the taxable purchase price for Pennsylvania Sales and Use Tax purposes. This practice is called "grossing up".

 Under the same statutory scheme, the PA Foreign Franchise Tax is imposed on non-PA joint-stock associations, limited liability companies, business trusts, and entities organized as corporations or considered corporations by the federal government for the privilege of doing business in Pennsylvania. Both taxes are *137 imposed on a corporation's capital stock value, as derived according to the same statutory formula. (72 P.S. 7601(a))

 According to the Pennsylvania Public Utility website, even if an electric supplier charges quotes the gross tax rate of 5.90%, the electric generation supplier is obligated to pay Pennsylvania a gross tax rate of 6.27% on the base price of electric generation supply due to gross-up factor that electric distribution companies and electric generation suppliers must pay Pennsylvania. Pennsylvania Public Utility Commission, PA Power Switch, http://www.papower switch.com/index.php?/frequently-asked-questions. For example, if a consumer is charged $100 per month for electricity, the electric suppliers may recover the full amount of the price plus the gross-up, or $106.27 from the consumer. Ibid. The parties did not state whether PPL implements this legally acceptable practice of including the gross-up rate when billing consumers.

 See Martha W. Jordan, Pennsylvania's Limited Liability Company Act Raises Taxing Questions, 69 Temp. L.Rev. 703, 717-718 (Summer, 1996), which contains the following note:
n114____The Capital Stock Tax is a property tax imposed on domestic corporations. See Commonwealth v. Standard Oil Co., 101 Pa. 119 (1882). Foreign corporations are subject to the franchise tax, Pa. Stat. Ann. tit. 72, 7602(b)(1), which applies to the privilege of doing business in Pennsylvania rather than to the foreign corporation's property. Commonwealth v. Colum *141 bia Gas & Elec. Corp. [336 Pa. 209], 8 A.2d 404, 410 (Pa.1939). The two taxes are calculated almost identically. The only significant difference is to the apportionment factor; the Capital Stock Tax uses a single factor apportionment formula and the franchise tax uses a three factor apportionment formula. Pa. Stat. Ann. tit. 12, 7602(a), (b)(1). Because the two taxes are so similar, domestic corporations may elect to be subject to the franchise tax and foreign corporations may elect to be subject to the Capital Stock Tax. Id.