KAHN, J.T.C.
This is the court’s opinion with respect to cross-motions for summary judgment determining whether Petroleum Gross Receipts Tax (PGRT), N.J.S.A. 54:15B-1 to -12, must be added back in calculating entire net income pursuant to a 1993 legislative amendment to the New Jersey Corporation Business Tax (CBT), N.J.S.A. 54:10A-1 to -41. Ross Fogg Fuel Oil Company (taxpayer) contests the add-back of PGRT by the Director, Division of Taxation (Division), in computing taxpayer’s CBT liability for tax years 2000 and 2001.
I. FACTUAL BACKGROUND [1]
Taxpayer is a corporation organized under the laws of New Jersey, with its principal place of business in Carneys Point, New Jersey. Taxpayer is in the business of selling and distributing motor fuels, such as gasoline and diesel fuel, and as such is subject to and pays PGRT. Taxpayer conducts its entire business within the State of New Jersey. On June 14, 2001, the Division issued a proposed CBT assessment against taxpayer for the years 1997 through 1999. In that assessment, the Division disallowed taxpayer’s deduction of its PGRT payments. However, on June 22, 2001, the Division advised taxpayer that no changes were made to their *374 taxes for those years. On October 21, 2003, the Division issued a notice in relation to a final audit determination in regard to taxpayer’s 2000 and 2001 CBT returns in which it assessed additional liabilities of $19,949, plus interest and $16,465, plus interest, for 2000 and 2001, respectively, after adding back the PGRT payments of $997,423 for 2000 and $610,235 for 2001,[2] to determine taxpayer’s entire net income for the years at issue. Taxpayer appealed the additional liabilities.
II. SUMMARY JUDGMENT STANDARD
Summary judgment should be granted where “the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.” R. 4:46-2(c). In Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 666 A.2d 146 (1995), the Supreme Court of New Jersey revised the summary judgment standard and articulated:
[W]hen deciding a motion for summary judgment under Rule 4:46-2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
[ 142 N.J. at 523, 666 A.2d 146. ]
The court must also “accept as true all the evidence which supports the position of the party defending against the motion and must accord ... [the party] the benefit of all legitimate inferences which can be deduced therefrom, and if reasonable minds could differ, the motion must be denied.” Brill, supra, 142 N.J. at 535, 666 A.2d 146 (citing Pressler, Current N.J. Court Rules, comment on R. 4:40-2 (1991) (citations omitted)). There being no issues of material fact in dispute, this matter is ripe for summary judgment.
*375 III. STATUTORY CONSTRUCTION
New Jersey assesses the CBT based on a corporation’s entire net income. An explanation of entire net income under New Jersey law was detailed in Amerada Hess Corp. v. Direction, Div. of Taxation, 107 N.J. 307, 526 A.2d 1029 (1987), aff'd, 490 U.S. 66, 109 S.Ct. 1617, 104 L.Ed.2d 58 (1989):
The entire net income base for the C.B.T. is similar but not identical to the tax base used for federal corporate income tax purposes. Adjusted gross income for federal tax purposes is calculated by deducting certain federal and State taxes paid by the corporation. New Jersey law specifically requires that certain amounts paid in federal taxes be added back into the tax base for calculation of the C.B.T. This is called the “add-back” provision. Thus, the base for federal corporate income tax is not identical to the “net income” base on which the C.B.T. is assessed.
[Id at 311-12, 526 A.2d 1029.]
Prior to 1993, the CBT contained no prohibition against deducting taxes paid to other states. However, New Jersey corporations doing business in New Jersey, such as taxpayer, were required to add-back their CBT taxes. See N.J.S.A. 54:10A-4(k) (amended 1993). This meant that New Jersey corporations conducting business in more than one state could reduce their entire net income by corporate income tax payments made to those other states, effectively reducing their portion of net income allocated to New Jersey, and lowering their tax rates. In 1993, the Legislature, in an effort to correct this inequity, amended N.J.S.A 54:10A-4(k)(2)(C) to expand the tax add-back provision of the CBT to disallow a deduction or credit of:
[t]axes paid or accrued to the United States, a possession or territory of the United States, a state, a political subdivision thereof, or the District of Columbia, or to any foreign country, state, province, territory or subdivision thereof, on or measured by profits or income, or business presence or business activity, or the tax imposed by this act ...
[N.J.S.A. 54:10A-4(k)(2)(C).]
The issue in the present matter is whether the 1993 amendment to the CBT, enacted by L. 1993, c. 173, § 1, requires (a) an add-back of additional New Jersey taxes other then the CBT itself (“or the tax imposed by this act.”); (b) if so, is the PGRT subject to such add-back, and finally, (c) if the PGRT is subject to being added back, did the Division’s interpretation of the legislation and *376 promulgation of the Division’s interpretation constitute invalid rule-making pursuant to N.J.S.A. 52-.14B-4.[3]
A. Expansion of the New Jersey Add-back Requirement
Taxpayer contends that the 1993 amendment to the CBT Act addressed and was intended to address the add-back of only taxes paid to other states and that with respect to New Jersey, the only tax subject to an add-back was the CBT itself, as was the ease prior to the 1993 amendment. The key issue is whether the term “a state” utilized by the 1993 amendment refers only to states other then New Jersey, or includes New Jersey along with all other states. “In determining a statute’s meaning we consider first the statutory language, for if the statute ‘is clear and unambiguous on its face and admits of only one interpretation, we need delve no deeper than [its] literal terms to divine the Legislature’s intent.’ ” G.E. Solid State, Inc. v. Director, Div. of Taxation, 132 N.J. 298, 306, 625 A.2d 468 (1993) (quoting State v. Butler, 89 N.J. 220, 226, 445 A.2d 399 (1982) (alteration in original)). On its face the phrase “a state” is ambiguous and could mean only states other then New Jersey, or could include New Jersey. Thus we turn to legislative history in order to interpret statutory language in a manner consistent with the legislature’s objective in adopting the statute. See State v. Maguire, 84 N.J. 508, 514, 522, 423 A.2d 294 (1980).
The voluminous legislative history concerning the 1993 amendment leads to the conclusion that the amendment was enacted to stop the tax rate discrimination that existed prior to the amendment. In explaining how the bill would work, the joint legislative committee explained:
First, the bill disallows the deduction of the taxes of other United States taxing jurisdictions in calculating the “entire net income” of a corporation that is allocated to New Jersey for corporation business tax purposes. New Jersey uses a formula to determine the percentage of the total income of a corporation that is fairly *377 related to the corporation’s activity in New Jersey. Only that part of the total of a corporation’s income that is related to activities in New Jersey is subject to tax; effectively, the rest of the corporation’s income is exempt from New Jersey tax. If the deduction of the taxes of other jurisdictions is allowed, corporations which do business in several states pay a lower effective rate of tax on their New Jersey activities than do corporations which only do business in New Jersey. This bill ends that tax rate discrimination.
[Joint Legislative Committee on Economic Recovery Statement to Assembly Committee Substitute for Assembly, Nos. 273 and 1870 (June 2, 1993) (emphasis added).!
Taxpayer contends that the discussion of “other” state’s taxes is evidence that the Legislature never intended to expand the scope of the tax add-back to include other New Jersey taxes. Taxpayer contends that the add-back of New Jersey taxes, other than the taxes already imposed by the CBT prior to the 1993 amendment, only exacerbates the tax rate discrimination problem that the Legislature sought to eliminate. Taxpayer further contends that the court should look towards the plain meaning of the statute: that if the Legislature intended the reference to “a state” to include New Jersey, then the Legislature would have deleted the reference to New Jersey’s CBT (“or the tax imposed by this Act”).
In response, the Division points to other tax related legislation in which the state, while attempting to exclude “New Jersey” utilized “another” state. See, e.g., N.J.S.A. 54A:4-1(a) (individual taxpayer allowed credit for taxes paid to “another” state). See also, McDonnell v. State of Illinois, 319 N.J.Super. 324, 337-39, 725 A.2d 126 (App.Div.1999), aff'd, 163 N.J. 298, 748 A.2d 1105, cert. denied, 531 U.S. 819, 121 S.Ct 59, 148 L.Ed.2d 26 (2000) (interpreting “the State” in the definition of “employer” as logically and sensibly to mean any state, not just New Jersey, pursuant to N.J.S.A. 1:1-2, and comparing other state statutes in this regard, such as N.J.S.A. 2A:41A-1 (“[a] State” means “a State of the United States”); N.J.S.A. 2A:159A-2(a) (“State” means “a State of the United States”) and N.J.S.A. 30:7B-2(h) (“State” means “any State ... of the United States.”)).
This court finds that taxpayer’s interpretation is correct. The Supreme Court of New Jersey stated in Fedders Financial Corp. v. Director, Division of Taxation, 96 N.J. 376, 385, 476 A.2d 741 (1984), that “[wjhen interpretation of a taxing provision is in *378 doubt, and there is no legislative history that dispels that doubt, the court should construe the statute in favor of the taxpayer.” Here, the legislative history spells out the reasoning for the amendment’s promulgation: to eradicate the tax rate discrimination against New Jersey corporations with solely in-state activity. The amendment was enacted to capture the out-of-state income that had not previously been subject to the add-back. This court further finds that the retention in the statute’s wording of the disallowance for the CBT deduction was kept to maintain consistency. As such, this court holds that N.J.S.A. 54:10A-4(k)(2)(C) requires that the add-back of taxes paid to a state is not inclusive of taxes paid to New Jersey, other than the CBT.
B. The PGRT
Because this court has found that N.J.S.A 54:10A-4(k)(2)(C) does not require the add-back of New Jersey taxes other than the CBT, this court need not discuss the nature of the PGRT, but chooses to discuss that tax as an additional basis for its ruling.
The PGRT was adopted in 1990. See N.J.S.A. 54:15B-1 to -12. It imposes a tax on companies engaged in the refining and/or distribution of petroleum products. N.J.S.A. 54:15B-3. The tax is imposed on the first sale of petroleum products within New Jersey. Ibid. The PGRT has two rate structures. The general tax rate for gross receipts from petroleum products is 2.75%. Ibid. The 2.75% tax rate is converted to a tax of four cents per gallon for fuel oils, aviation fuels, and motor fuels. Ibid. Companies that import or cause petroleum products to be imported into New Jersey for their own use or consumption, and are not otherwise subject to the tax, must pay PGRT if the consideration given or contracted to be given for deliveries of petroleum products during a quarterly period exceeds $5,000. N.J.S.A. 54:15B-3(b).
A company is allowed a credit against the tax if a purchaser of petroleum products first sold within New Jersey sells these products for exportation and use outside New Jersey, provided that (1) the purchaser issues a certificate evidencing a sale outside of New *379 Jersey, and (2) the company liable for the tax has paid to the purchaser an amount equal to the tax imposed on gross receipts derived from the first sale to the purchaser within New Jersey. A credit is also provided for companies that import or cause to be imported petroleum products for sale or use outside the state. N.J.S.A. 54:15B-5.
Taxpayer contends that their PGRT liability is based upon the number of gallons of petroleum products sold and is a pure transactional tax. If the PGRT is a pure transactional tax and not a tax “measured by profits or income” or a tax on “business presénee or business activity” then it is not subject to an add-back. N.J.SA. 54:10A-4(k)(2)(C).
Whether a tax qualifies as one “measured by profits or income,” and thus, includable in the tax base for the CBT, was addressed by the New Jersey Supreme Court in Amerada Hess, supra, 107 N.J. at 307, 526 A.2d 1029. There, the New Jersey Supreme Court found that the Federal Windfall Profit Tax on Domestic Crude Oil (WPT), 26 U.S.CA. § 4986 to § 4998, is measured by income or profit, despite the fact that the WPT had been labeled or termed an excise tax. The WPT was imposed on the increase of income attributed to decontrolled crude oil prices. The increase was not the result of an infusion of capital or expenditures by the oil producers, but was created by international oil shortages which decreased supply and raised prices. Amerada Hess, supra, 107 N.J. at 314, 526 A.2d 1029. The WPT was imposed on production at the wellhead. The measure of the increased profit, often called the windfall, was the difference between the uncontrolled and the controlled price of a barrel of crude oil at the time the oil was removed. Id. at 315, 526 A.2d 1029. “The fact that the posted price may fall subsequent to the lifting of the oil or that some barrels may be lost following severance from the lease is irrelevant. The fact that some of the plaintiffs subsequently lose barrels of oil and are not entitled to refunds of W.P.T. in respect of such losses does not impugn the fact that oil production income is realized when oil is lifted.” Id. at 333, 526 A.2d 1029.
*380 The Division likens the PGRT to the WPT and, as such, asserts the PGRT is a tax on income. However, the PGRT and the WPT are distinguishable. The WPT was essentially imposed on income that, though abstract in its nature, was still income. At the moment oil is lifted from the ground, oil has an income based on federal deregulation of oil prices. The PGRT, whether taxed at four cents per gallon or at the 2.75% rate, is not a tax on income, it is a tax that is required not only on the sale, but also on the importation and consumption of such fuels. The fact that the PGRT is labeled a tax on “petroleum gross receipts” lends no support to the conclusion that the PGRT is a tax on income, especially since the tax is converted to a per gallon tax on corporations such as taxpayer in the instant ease. Hence, the PGRT is not a tax measured by profits or income.
Whether a tax qualifies as one measured by “business presence or business activity” has essentially been defined by the throw-out rule (taxes that, must be excluded from the denominator for apportioning income to New Jersey under the CBT). See N.J.A.C. 18:7-8.7(f). The throw-out rule defines “business presence or business activity” taxes as taxes including:
[b]ut not limited to, net worth taxes, gross receipts taxes, single business taxes. For example, business presence or business activity taxes include, but are not limited to, the Pennsylvania Bank Shares Tax (72 P.S. 7701 et seq.) and the New York Franchise Tax on Banking Corporations (Article 32 of the New York tax laws). Property taxes, excise taxes (for example, cigarette taxes), payroll taxes, and sales taxes are not considered “business presence” or “business activity” taxes.
[N.J.A.C. 18:7 — 8.7(1).]
Taxpayers claim that the “business presence or business activity” wording in the 1993 amendment was included in order to reach broad-based business taxes that are analogous to the CBT in other states, but are not based on or measured by profits, such as the Michigan, Texas and Washington taxing structures. Michigan’s Single Business Tax is imposed upon the adjusted tax base of every person with business activity in the state and is not measured by net income. See Mich. Comp. Law § 208.31(1). The Texas corporate franchise tax is essentially an excise tax or license for the privilege of doing business within the state which takes *381 into account both property and income. See Texas Franchise Tax 2400:0201. The Washington tax is also imposed on the act or privilege of engaging in business in the state and is measured by the application of rates against value of products, gross proceeds of sales, or gross income of business. See Wash. Rev.Code § 82.04.220. Taxpayer urges that the PGRT is nothing like these taxes and that the PGRT is more akin to a cigarette tax which is not considered a tax on “business presence or business activity.” Taxpayer claims that the object of the PGRT is to tax the sale of a particular product (petroleum), not the business presence of the corporation within New Jersey.
The category of taxes into which the PGRT falls under has been debated, even within the Division itself. On April 25, 2001, a supervising auditor for the State noted in an internal memo “we do not know if this is includable as an add-back and have gotten different answers from different CBT auditors.” Affidavit of Michael Guaiiglia, Exhibit A. On June 22, 2001, in a second internal memo, a different auditor for the State wrote “It is similar to a Sales Tax, and is not includable as an add-back.” Affidavit of Michael Guañglm, Exhibit B. Finally, on February 8, 2002, a final internal memorandum was sent to the Office Audit Examination Staff which stated that the PGRT was subject to an add-back as a tax based upon income or business presence. Affidavit of Michael Guariglia, Exhibit C. The auditor stated that “[ajlthough the PGRT smells like an excise tax because in large part its tax rate is $.04 per gallon, it is in reality a tax imposed on a company’s gross receipts derived from first sales of petroleum products within New Jersey.” Ibid.
The Division argues that the PGRT is not an excise tax since it is only imposed on the first sale of petroleum products in New Jersey. In addition, the Division contends that inasmuch as it is the first sale in the State, it clearly constitutes a tax on business presence or activity. The Division also emphasizes that the PGRT includes provisions for a credit where the first sale occurs in New Jersey, but the petroleum product is subsequently sold for exportation to another state. N.J.S.A. 54:15B-5(c). However, that occurs only when the buyer pays to the purchaser an amount *382 equal to the tax imposed on gross receipts derived from the first sale to the purchaser within New Jersey. N.J.S.A. 54:15B-5(c)(2). That resembles an excise tax. Excise taxes are:
[t]axes paid when purchases are made on a specific good, such as gasoline. Excise taxes are often included in the price of the product. There are also excise taxes on activities, such as on wagering or on highway usage by trucks. Excise tax has several general excise tax programs. One of the major components of the excise program is motor fuel.
[Internal Revenue Service, Excise Tax (May 10, 2005) available at http://www.irs. gov/businesses/ small/artiele/0„ id=99517,00.html]
The PGRT is on the first sale of a designated product, petroleum. Although it is based on either a percentage of gross receipts or per gallon, it is a tax that is built into each first sale to be paid either by the seller, or by the buyer (if it is exported). This court finds that the PGRT is not a tax on “business presence or business activity,” and hence, is not subject to an add-back.
IV. CONCLUSION
For the foregoing reasons, this court concludes that N.J.S.A. 54:10A-4(k)(2)(C) does not require the add-back of the PGRT in calculating the taxpayer’s 2000 and 2001 CBT liability. Therefore, this court need not address taxpayer’s third argument regarding the Division’s administrative procedures.
This court grants taxpayer’s motion for summary judgment, setting aside the Division’s final determination dated October 21, 2003, and all related accrued interest and penalties. Consequently, this court denies the Division’s cross-motion for summary judgment.

 These facts are not in dispute.

 It was subsequently discovered that the PGRT payments were actually $982,515.66 (2000) and $606,706.04 (2001) for the years at issue.

 For reasons hereinafter set forth, this court will not address taxpayer’s third contention, as the court finds that the Division's interpretation of the statute is incorrect, and accordingly, even a properly adopted regulation would not be enforceable. Service Armament Co. v. Hyland, 70 N.J. 550, 562-63, 362 A.2d 13 (1976).