DeALMEIDA, P.J.T.C.
This opinion concerns the proper method for calculating a taxpayer’s entire net income subject to New Jersey Corporation Business Tax (“CBT”). According to the CBT Act, a taxpayer’s entire net income subject to CBT is equal to its federal taxable income with several exceptions. One of the exceptions is set forth in N.J.S.A. 54:10A-4(k)(2)(C), which requires a taxpayer to add back to its federal taxable income deductions the taxpayer took for federal tax purposes for taxes paid to any State “on or measured by profits or income, or business presence or business activi-ty____” In the present ease, plaintiff deducted from its federal taxable income taxes it paid to North Carolina and South Carolina on its net corporate income, as well as taxes paid to those States under statutes applicable to electric utilities. Although the taxpayer, when calculating its CBT liability, added back the taxes it paid to North Carolina and South Carolina on its net corporate income it did not add back the electric utilities taxes it paid those *229 States. The Director, Division of Taxation contends that the electric utilities taxes paid by plaintiff must be added back to its federal taxable income to determine the taxpayer’s entire net income subject to CBT.
The court concludes that the electric utilities taxes paid by plaintiff to North Carolina and South Carolina are not taxes “on or measured by profits or income, or business presence or business activity” within the meaning of N.J.S.A. 54:10A-4(k)(2)(C) and are not, therefore, required to be added back to the taxpayer’s federal taxable income for CBT purposes. The legislative history of N.J.S.A. 54:10A-4(k)(2)(C) clearly indicates that the add back provision is intended to capture only taxes paid to other States on a taxpayer’s net corporate income. The electric utilities tax paid by plaintiff to North Carolina and South Carolina do not fit into this category.
I. Findings of Fact
The court makes the following findings of fact based on the submissions of the parties in support of their cross-motions for partial summary judgment and the pleadings.
Plaintiff Duke Energy Corporation (“Duke”) is a corporation organized under the laws of North Carolina with its principal place of business in that State. Duke conducts business through various divisions, and delivers power to more than two million customers in a 22,000-mile service area in North Carolina and South Carolina. Duke, through one of its divisions, Duke Power Company, owns and operates several nuclear, coal-fired, hydroelectric and combustion turbine electric generating facilities, and maintains 92,000 miles of distribution and transmission lines in North Carolina and South Carolina.
Duke also has business operations in New Jersey. One of Duke’s divisions, Duke Energy Merchants, conducts business in this State as a marketer of crude oil, refined products, liquid petroleum gas, residual fuels and coal. As a result, during the tax years in question, 2000 through 2003, Duke was subject to New Jersey CBT.
*230 Due to its business operations in North Carolina and South Carolina during the same period, Duke was subject to net corporate income taxes in both North Carolina, N.C. Gen.Stat. § 105-130.3, and South Carolina, S.C.Code Ann. § 12-6-530. In addition to paying net corporate income tax to North Carolina and South Carolina for the relevant tax years Duke paid a North Carolina tax imposed on electric utilities, N.C. Gen.Stat. § 105-116, and a South Carolina tax imposed on electric utilities, S.C.Code Ann. § 12-20-100 (the “Utilities Taxes”).
To compute its entire net income for CBT purposes, N.J.S.A. 54:10A-4(k), Duke began with its federal taxable income, which had been reduced for federal tax purposes by deductions equal to the net corporate income taxes paid by Duke to North Carolina and South Carolina and the Utilities Taxes Duke paid to those States. Pursuant to N.J.S.A. 54:10A-4(k)(2)(C), Duke added back to its federal taxable income an amount equal to the North Carolina and South Carolina net corporate income taxes it paid. Duke did not add back to its federal taxable income an amount equal to the Utilities Taxes it paid to North Carolina and South Carolina, except that for the year ended December 31, 2003, Duke added back an amount equal to the North Carolina Utilities Tax it paid for that period. Duke alleges that this add back was inadvertent.
The New Jersey Division of Taxation audited Duke and issued a Notice of Assessment related to Final Audit Determination dated January 31, 2007. In the Notice, the Division took the position that when calculating its CBT liability, Duke should have added back to its federal taxable income all of the Utilities Taxes Duke paid to North Carolina and South Carolina. As a result, the Division assessed additional CBT, interest and penalties against Duke.
On April 26, 2007, Duke protested the Notice and requested a refund of the CBT it paid for the tax year ended December 31, 2003 as a result of its inadvertent add back to its federal taxable income of an amount equal to the North Carolina Utilities Tax it paid for that period.
*231 On May 27, 2008, the Director issued a Final Determination rejecting Duke’s position. The Final Determination assessed CBT, penalties and interest against Duke arising from the Director’s determination that when calculating its CBT obligation for the relevant tax years Duke should have added back to its federal taxable income an amount equal to all of the Utilities Taxes Duke paid to Nox-th Carolina and South Carolina.
On August 11, 2008, Duke filed a Complaint in this court challenging the Director’s Final Determination.
The parties cross-moved for partial summary judgment with respect to the add-back of the Utilities Taxes paid by Duke to North Carolina and South Carolina. The court thereafter heard oral argument from counsel.[1]
II. Conclusions of Law
Summary judgment should be granted whex-e “the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or ox’der as a matter of law.” R. 4:46-2(e). In Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523, 666 A.2d 146 (1995), our Supreme Court established the standard for summary judgment as follows:
[W]hen deciding a motion for summary judgment under Rule 4:46-2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential *232 materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
“The express import of the Brill decision was to ‘encourage trial courts not to refrain from granting summary judgment when the proper circumstances present themselves.’ ” Township of Howell v. Monmouth County Bd. of Taxation, 18 N.J.Tax 149, 153 (Tax 1999) (quoting Brill, supra, 142 N.J. at 541, 666 A.2d 146). The court concludes that this matter is ripe for decision by summary judgment. There are no material facts genuinely in dispute between the parties and the validity of the Director’s Final Determination with respect to the add back to Duke’s federal taxable income of the Utilities Taxes can be decided by application of the law to the facts.
The court’s analysis is influenced by the familiar principle that the Director’s interpretation of tax statutes is entitled to a presumption of validity. “Courts have recognized the Director’s expertise in the highly specialized and technical area of taxation.” Aetna Burglar & Fire Alarm Co. v. Director, Div. of Taxation, 16 N.J.Tax 584, 589 (Tax 1997) (citing Metromedia, Inc v. Director, Div. of Taxation, 97 N.J. 313, 327, 478 A.2d 742 (1984)). The scope of judicial review of the Director’s decision with respect to the imposition of a tax “is limited.” Quest Diagnostics, Inc. v. Director, Div. of Taxation, 387 N.J.Super. 104, 109, 903 A.2d 442 (App.Div.), certif. denied, 188 N.J. 577, 911 A.2d 69 (2006). The Supreme Court has directed the courts to accord “great respect” to the Director’s application of tax statutes, “so long as it is not plainly unreasonable.” Metromedia, supra, 97 N.J. at 327, 478 A.2d 742. See also GE Solid State, Inc. v. Director, Div. of Taxation, 132 N.J. 298, 306, 625 A.2d 468 (1993) (“Generally, courts accord substantial deference to the interpretation an agency gives to a statute that the agency is charged with enforcing.”). However, judicial deference is not absolute. An administrative agency's interpretation of the law that is plainly at odds with the statute will not be upheld. See Oberhand v. Director, Div. of Taxation, 193 N.J. 558, 568, 940 A.2d 1202 (2008) (citing GE Solid State, supra, 132 N.J. at 306, 625 A.2d 468).
*233 It is against this backdrop of guiding principles that the court must evaluate the Director’s Final Determination. The CBT Act imposes a tax on each non-exempt domestic corporation and foreign corporation “for the privilege of having or exercising its corporate franchise in this State, or for the privilege of deriving receipts from sources within this State, or for the privilege of engaging in contacts within this State, or for the privilege of doing business, employing or owning capital or property, or maintaining an office, in this State.” N.J.S.A. 54:10A-2. The tax is imposed on a corporation’s “entire net income,” which is defined as follows:
“Entire net income” shall mean total net income from all sources, whether within or without the United States, and shall include the gain derived from the employment of capital or labor, or from both combined, as well as profit gained through a sale or conversion of capital assets.
[N.J.S.A. 54:10A-4(k).]
This broad definition of entire net income is limited in the following paragraph of the statute:
For the purpose of this act, the amount of a taxpayer’s entire net income shall be deemed prima facie to be equal in amount to the taxable income, before net operating loss deduction and special deductions, which the taxpayer is required to report ... to the United States Treasury Department for the purpose of computing its fedei’al income tax____
[N.J.S.A. 54:10A-4(k).]
This provision couples entire net income under the CBT Act to line 28 of the federal income tax return which is entitled “Taxable income before net operating loss deduction and special deductions.” A corporation’s entire net income is presumptively the same as its federal taxable income before net operating loss deductions and special deductions. Amerada Hess Corp. v. Director, Div. of Taxation, 107 N.J. 307, 313, 526 A.2d 1029 (1987), aff'd, 490 U.S. 66, 109 S.Ct. 1617, 104 L.Ed.2d 58 (1989).
After linking entire net income for CBT purposes to line 28 of the federal return, the statute provides that “[e]ntire net income shall be determined without the exclusion, deduction or credit of’ and lists several exceptions — both additions and subtractions — to federal tax statutes that define federal taxable income. See N.J.S.A. 54:10A-4(k)(2)(A) through (J). Only those exceptions expressly stated in N.J.S.A. 54:10A-4(k)(2) authorize a departure from the taxpayer’s federal taxable income. International Busi *234 ness Machines Corp. v. Director, Div. of Taxation, 26 N.J.Tax 102, 110 (Tax 2011).
The exception at issue here is found at N.J.S.A. 54:10A-4(k)(2)(C). The statute provides, in relevant part, as follows:
(2) Entire net income shall be determined without the exclusion, deduction or credit of:
(C) Taxes paid or accrued to ... a state ... on or measured by profits or income, or business presence or business activity, or the tax imposed by this act— [N.J.S.A. 54:10A-4(k)(2)(C).]
As noted above, for the tax years in question, Duke deducted from its federal taxable income both the net corporate income taxes it paid to North Carolina and South Carolina and the Utilities Taxes it paid to those States. The parties agree that the net corporate income taxes Duke paid to North Carolina and South Carolina were correctly added back to Duke’s federal taxable income when calculating its CBT liability. The parties part ways with respect to whether the Utilities Taxes paid by Duke are subject to the add back mandate in N.J.S.A. 54:10A-4(k)(2)(C).
In Ross Fogg Fuel Oil Co. v. Director, Div. of Taxation, 22 N.J.Tax 372 (Tax 2005), Judge Kahn examined the text and history of N.J.S.A. 54:10A-4(k)(2)(C). His opinion provides significant guidance to this court in analyzing Duke’s claims. As the Ross Fogg court explained, in 1993 N.J.S.A. 54:10A-4(k)(2)(C) was amended to include the language at issue here. The history of that amendment illuminates the statute’s meaning:
Prior to 1993, the CBT contained no prohibition against deducting taxes paid to other states. However, New Jersey corporations doing business in New Jersey ... were required to add-back their CBT taxes. See N.J.S.A. 54:10A-4(k) (amended 1993). This meant that New Jersey corporations conducting business in more than one state could reduce their entire net income by corporate income tax payments made to those other states, effectively reducing their portion of net income allocated to New Jersey, and lowering their tax rates. In 1993, the Legislature, in an effort to correct this inequity, amended N.J.S.A. 54:10A-4(k)(2)(C)....
[Id. at 375.]
The 1993 amendment changed the statute as follows:
(2) Entire net income shall be determined without the exclusion, deduction or credit of:
*235 (C) Taxes paid or accrued to the United States, a possession or territory of the United States, a state, a political subdivision thereof, or the District of Columbia on or measured by profits or income, or business presence or business activity, or the tax imposed by this act____[2]
[L. 1993, c. 173, § 1.]
Judge Kahn observed that the “voluminous legislative history concerning the 1993 amendment leads to the conclusion that the amendment was enacted to stop the tax rate discrimination that existed prior to the amendment.” Ross Fogg, supra, 22 N.J.Tax at 376. In light of this legislative history, Judge Kahn held that the clear purpose of the statute was to put taxpayers subject only to CBT on equal footing with taxpayers subject to CBT and equivalent net corporate income taxes in other States.
At issue in Ross Fogg was whether a taxpayer was required by N.J.S.A. 54:10A-4(k)(2)(C) to add-back to its federal taxable income not only the CBT that it had paid, but also an amount equivalent to its payment of the New Jersey Petroleum Gross Receipts Tax, N.J.S.A. 54:15B-1 to -12 (“PGRT”). That tax applies to companies engaged in refining and/or distributing petroleum products. N.J.S.A. 54:15B-3. The tax is imposed on the first sale of petroleum products within the State. Ibid. The tax rate is 2.75% on gross receipts of petroleum products generally and is converted to a rate of four cents per gallon for fuel oils, aviation fuels and motor fuels. Ibid. Taxpayers are permitted a credit against the tax, in some circumstances, if a purchaser of petroleum products first sold in New Jersey sells the products for exportation and use outside of New Jersey. A credit is also provided for companies that import or cause to be imported petroleum products for sale or use outside the State. N.J.S.A. 54:15B-5.
To determine whether the PGRT is a tax “measured by profits or income” within the meaning of N.J.S.A. 54:10A-4(k)(2)(C) the court looked to the holding in Amerada Hess, supra. As Judge Kahn explained
*236 There, the New Jersey Supreme Court found that the Federal Windfall Profit Tax on Domestic Crude Oil (WPT), 26 U.S.C.A. § 4986 to § 4998, is measured by income or profit, despite the fact that the WPT had been labeled or temed an excise tax. The WPT was imposed on the increase of income attributed to decontrolled crude oil prices. The increase was not the result of an infusion of capital or expenditures by the oil producers, but was created by international oil shortages which decreased supply and raised prices. Amerada Hess, supra, 107 N.J. at 314, 526 A.2d 1029. The WPT was imposed on production at the wellhead. The measure of the increased profit, often called the windfall, was the difference between the uncontrolled and the controlled price of a barrel of crude oil at the time the oil was removed. Id. at 315, 526 A.2d 1029. “The fact that the posted price may fall subsequent to the lifting of the oil or that some barrels may be lost following severance from the lease is irrelevant. The fact that some of the plaintiffs subsequently lose barrels of oil and are not entitled to refunds of W.P.T. in respect of such losses does not impugn the fact that oil production income is realized when oil is lifted.” Id. at 333, 526 A.2d 1029.
[Id. at 379.]
The court determined that the PGRT is not similar to the WPT for several reasons:
The Division likens the PGRT to the WPT and, as such, asserts the PGRT is a tax on income. However, the PGRT and the WPT are distinguishable. The WPT was essentially imposed on income that, though abstract in its nature, was still income. At the moment oil is lifted from the ground, oil has income based on federal deregulation of oil prices. The PGRT, whether taxed at four cents per gallon or at the 2.75% rate, is not a tax on income, it is a tax that is required not only on the sale, but also on the importation and consumption of such fuels. The fact that the PGRT is labeled a tax on “petroleum gross receipts” lends no support to the conclusion that the PGRT is a tax on income, especially since the tax is converted to a per gallon tax on corporations such as taxpayer in the instant case. Hence, the PGRT is not a tax measured by profits or income.
[Id. at 380.]
To determine whether the PGRT is a tax on “business presence or business activity” within the meaning of N.J.S.A. 54:10A-4(k)(2)(C), the court looked to a Division of Taxation regulation interpreting the Throw Out Rule, a provision of the CBT Act. According to N.J.A.C. 18:7-8.7(f),
“Business presence” or “business activity” taxes include, but are not limited to, net worth taxes, gross receipts taxes, single business taxes. For example, business presence or business activity taxes include, but are not limited to, the Pennsylvania Bank Shares Tax (72 P.S. 7701 et seq.) and the New York Franchise Tax on Banking Corporations (Article 32 of the New York tax laws). Property taxes, excise taxes (for example, cigarette taxes), payroll taxes, and sales taxes are not considered “business presence” or “business activity” taxes.
The court concluded that the PGRT is not a business presence or business activity tax. The court held that the PGRT is more *237 akin to a tax on a particular product than it is on the business presence of a corporation in New Jersey. The court reasoned that
The PGRT is on the first sale of a designated product, petroleum. Although it is based on either a percentage of gross receipts or per gallon, it is a tax that is built into each first sale to be paid either by the seller, or by the buyer (if it is exported). The court finds that the PGRT is not a tax on “business presence or business activity,” and hence, is not subject to an add-back.
[Id. at 382.] [3]
The Ross Fogg court’s holding is supported by the fact that the two statutes mentioned in the regulation impose taxes in lieu of a general corporate net income tax. See N.Y. Tax Law § 209(4) (“corporations taxable under artiele[ ] thirty-two [ie., New York Franchise Tax on Banking Corporations] ... shall not be subject to tax under this article” [ie., the New York Franchise Tax on General Corporations].); 72 Pa. Stat. 7402(c) (“An entity subject to taxation under Article VII [ie., the Pennsylvania Bank Shares Tax] ... shall not be subject to the tax imposed by this article” [ie., the Pennsylvania Corporate Net Income Tax].).
Applying the rationale of Ross Fogg the court concludes that the Utilities Taxes at issue here also are not taxes “on or measured by profits or income, or business presence or business activity” within the meaning of N.J.S.A. 54:10A-4(k)(2)(C).
A. North Carolina Utilities Tax.
N.C. Gen.Stat. § 105-116 imposes an “annual franchise or privilege tax” on “[a]n electric power company engaged in the business of furnishing electricity, electric lights, current, or power,” as well as water and public sewerage utilities. The tax imposed on an electric power company, such as Duke, is computed as follows:
*238 The tax on an electric power company is three and twenty-two hundredths percent (3.22%) of the company’s taxable gross receipts from the business of furnishing electricity, electric lights, current, or power.
* * *
A company’s taxable gross receipts are its gross receipts from business inside the State less the amount of gross receipts from sales reported under subdivision (b)(2).
[N.C. Gen.Stat. § 106-116(a)(4).]
Subdivision (b)(2) of the North Carolina statute contains, in effect, a sale for resale exemption. That portion of the statute excludes from the receipts subject to the tax
[t]he taxpayer’s gross receipts from commodities or services described in subsection (a) that are sold to a vendee subject to the tax levied by this section or to a joint agency established under Chapter 159B of the General Statutes or a city having an ownership share in a project established under that Chapter.
[N.C. Gen.Stat. § 105-116(b)(2).] [4]
Chapter 159B of the North Carolina General Statutes concerns joint municipal electric power utilities. N.C. Gen. Stat. § 159B.
Like the PGRT, the North Carolina Utilities Tax is imposed on the sale of designated products, i.e. electricity, electric lights, current and power, in that State. The statute contains a sale for resale exemption. The tax is not measured by profits; it is instead measured by gross receipts. The statute does not allow for the deduction of costs. This means that the tax is due regardless of whether revenues from the sales exceed costs. Nor, like the PGRT, is the North Carolina Utilities Tax measured by income. The statute is not based on “abstract” income to Duke, as was the ease in Amerada Hess; it is based on gross receipts from the sale of particular products. The North Carolina Utilities Tax does not have broad application to business activities in the State and does not apply to all corporations.
North Carolina imposes a general net corporate income tax, which Duke paid for the years in question. Duke added back that net corporate income tax when it calculated its entire net income subject to the CBT. The North Carolina net gross income tax is the type of tax intended to be captured by the 1993 amendment to *239 N.J.S.A. 54:10A-4(k)(2)(C) to level the playing field and eliminate the inequity that existed prior to the amendment. North Carolina’s Utilities Tax does not fit into the statutory add-back provision.
B. South Carolina Utilities Tax.
S.C.Code Ann. § 12-20-100 imposes a “License tax on utilities and electric cooperatives.” The statute provides in relevant part as follows:
In place of the license fee imposed by Section 12-20-50, every ... power company ... [and] light company ... shall file an annual report with the department and pay a license fee as follows:
(1) one dollar for each thousand dollars, or fraction of a thousand dollars, of fair market value of property owned and used within this State in the conduct of business as determined by the department for property tax purposes for the preceding tax year; and
(2) (a) three dollars for each thousand dollars, or fraction of a thousand dollars, of gross receipts derived from services rendered from regulated business within this State during the preceding taxable year____
The South Carolina Utilities Tax is measured, in part, on the true market value of real property. According to N.J.A.C. 18:7-8.7(f), “[property taxes ... are not considered ‘business presence’ or ‘business activity’ taxes.” In addition, the other factor applicable to calculating the tax is gross receipts derived from the sale of a particular product — electricity services. The South Carolina Utilities Tax, like the PGRT, is not a broadly applied net corporate income tax. It is not imposed in lieu of such a tax, as the parties agree that Duke paid a South Carolina net corporation income tax, which it added back to its federal taxable income for CBT purposes. This statute is materially similar to the PGRT and the North Carolina Utilities Tax. As a result, it does not fall within the add-back mandate of N.J.S.A. 54:10A-4(k)(2)(C).
These conclusions comport the recent holding of Judge Brennan in PPL Elec. Utils. Corp. v. Director, Div. of Taxation, 28 N.J.Tax 128, 134-135 (Tax 2014), in which the court decided the question of whether two Pennsylvania taxes must be added back to federal taxable income under N.J.S.A. 54:10A-4(k)(2)(C). As Judge Brennan explained,
*240 The current version of the Add-Back Statute reflects amendments enacted in 1993 to rectify an inequity. Prior statutes only required the add-back of New Jersey CBT; similar income or profit-based taxes imposed by other states were not required to be added-back. As a result, corporations conducting business solely in New Jersey had to add-back all of their CBT taxes to calculate entire net income; however, corporations that conducted business in both New Jersey and other states only had to add-back the New Jersey CBT but not other state income taxes.
This system allowed “corporations which do business in several states [to] pay a lower effective rate of tax on their New Jersey activities than do corporations which only do business in New Jersey.” Assembly Appropriations Committee Statement, A. 273 and A. 1870, L.1993, c. 173 (June 3, 1993). The result was that New Jersey-only taxpayers were taxed at a higher tax basis than similarly situated multi-state taxpayers. In 1993, the statute was amended to cure this inequity by eradicating the tax rate discrimination against New Jersey corporations with solely in-state activity and disallowing the deduction for the taxes equivalent to the CBT imposed by other jurisdictions. Ross Fogg Fuel Oil Co. v. Director, Div. of Taxation, 22 N.J.Tax 372 (Tax 2005). The 1993 amendment “capture[d] out-of-state income that had not previously been subject to the add-back.” [Id.] at 378. In other words, the inequity was corrected by requiring multi-state taxpayers to add-back state taxes similar to that of the CBT.
[PPL Elec. Utils. Corp. v. Director, Div. of Taxation, 28 N.J.Tax 128, 134-135 (Tax 2014).]
The Utilities Taxes at issue here are not similar to the CBT. They are industry-specific assessments based on gross receipts imposed in addition to a net corporate income tax. The 1993 amendment to N.J.S.A. 54:10A-4(k)(2)(C) was not intended to encompass such taxes.[5]
The taxpayer’s motion for partial summary judgment is granted. The Director’s cross-motion for partial summary judgment is denied. The court will issue appropriate Orders.

 The Complaint contains Six Claims for Relief challenging various aspects of the May 27, 2008 Final Determination. Duke alleges that the Director: (1) improperly added back to Duke’s federal taxable income intercompany interest payments; (2) improperly included storage fees as rent in the property fraction of Duke's CBT allocation formula, see N.J.S.A. 54:10A-6(A); (3) improperly removed out-of-State receipts from the sales fraction of Duke's CBT apportionment formula under the so-called Throw Out Rule, see N.J.S.A. 54:10A-6(B)(6), as amended by L. 2002, c. 40, § 8; (4) violated the New Jersey Constitution by imposing an amnesty penalty on Duke; and (5) violated the United States Constitution by assessing CBT in an amount out of proportion to Duke's activities in New Jersey. The parties settled Duke’s claims with respect to the Throw-Out Rule. The remaining claims are not the subject of the parties' cross-motions.

 The statute was later amended to require the add-back of taxes paid to "any foreign country, state, province, territory or subdivision thereof.” L. 2002, c. 40, § 3. That provision of the statute is not at issue here.

 The Ross Fogg court also held that the only New Jersey tax subject to the add-back mandate in N.J.S.A. 54:10A-4(k)(2)(C) is the CBT. Id. at 377-378. Although this holding was sufficient to determine the validity of the Director's assessment in Ross Fogg, the court provided “an additional basis for its ruling," id. at 378, with its holding that the PGRT is not a tax “on or measured by profits or income, or business presence or business activity” within the meaning of N.J.S.A. 54:10A-4(k)(2)(C).

 The court notes that N.C. Gen.Stat. § 105-116 was repealed effective July 1, 2014. The tax years at issue here predate the effective date of the repeal.

 Having concluded that N.J.S.A. 54:10A-4(k)(2)(C) does not require the add-back of the Utilities Taxes, the court need not resolve Duke's argument that requiring those taxes to be added back to Duke's federal taxable income would violate the Commerce Clause.