TAX COURT OF NEW JERSEY

210 S. Broad Street, 5th Floor
Hon. Mary Siobhan Brennan, J.T.C.                                        Trenton, New Jersey 08608
JUDGE                                                        (609) 815-2922, Ext. 54560

January 31, 2019

Morrison & Foster LLP
Mitchell A. Newmark, Esquire
Craig B. Fields, Esquire (Pro Hac Vice)
250 West 55th Street
New York, NY 10019-9601

Office of the Attorney General
Michael J. Duffy, Deputy Attorney General
Richard J. Hughes Justice Complex
25 Market Street
PO Box 106
Trenton, New Jersey 08625-0106

> RE:     Daimler Investments US Corporation v. Director, Division of Taxation
>         Docket # 008165-2016

Dear Counsellors:

This is the court's opinion with respect to the parties' cross-motions for summary judgment.

At issue is whether N.J.S.A. 54:10A-4 (k) (2) (C), requires the add-back of taxes attributable to a New Jersey Taxpayer's income in a non-separate reporting State. For the reasons explained more fully below, the court concludes that N.J.S.A. 54:10A-4 (k) (2) (C) is independent of the filing and payment requirements of other States, and that the statutory term, "taxes paid or accrued" is meant to refer to the tax liability of an entity and not to the payer of the tax. As such, N.J.S.A. 54:10A-4 (k) (2) (C) requires the add-back of all taxes derived from the Taxpayer's activities in other States, regardless of which entity paid the tax.

## I.     Findings of Fact and Procedural History

The court makes the following findings of fact based on the submissions of the parties' cross-motions for summary judgement. R. 1:7-4.

1

## 1. <u>Separate versus Non-Separate Reporting of Corporate Income Tax</u>

Domestic corporations calculate their federal corporate income taxes by reporting their income, gains, losses, deductions and credits on a Form 1120 corporation income tax return. Although not an Internal Revenue Service requirement, corporations that are members of an affiliated group[1] have the option of filing a consolidated return, which combines the financial activity of all affiliated group members to arrive at a single taxable income figure. The principal advantage of filing a consolidated return is that the losses of one corporation can offset the profit of another, which means that less tax is owed than if separate returns are filed for each member corporation.

At the State level, corporation income tax returns and filing requirements vary considerably. Forty-four States and the District of Columbia levy a corporation income tax.[2] The remaining States either levy a gross receipts tax or do not impose a corporation tax or gross receipts tax at all.

Generally speaking, there are two types of corporation income tax reporting methods used by the States. Non-separate reporting permits a designated entity (usually the parent) to file one corporation

---

[1] An affiliated group exists when one corporation (referred to as the parent) holds stock that satisfies the voting and value requirements in at least one other corporation (subsidiary). Generally, the parent must hold at least 80 percent of value of the subsidiary's outstanding stock and must possess at least 80 percent of the shares that are eligible to vote. See e.g., I.R.C. § 1504; Idaho Code § 63-3027(t) et al. Moreover, additional corporations directly owned by the subsidiary (which means the parent does not hold the additional corporations' stock) can also be members of the affiliated group.

[2] Forty States, along with the District of Columbia, have adopted combined reporting. These States are: Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut (2016), Florida, Georgia (need governmental approval), Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Maine, Massachusetts (2008), Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, New Hampshire, New Jersey (2019), New Mexico, New York (2007), North Carolina, North Dakota, Oklahoma, Oregon, Rhode Island (2014), South Carolina, Tennessee, Utah, Vermont, Virginia, West Virginia, and Wisconsin (2009). The remaining four States, that have not adopted combined are Delaware, Louisiana, Maryland and Pennsylvania. For the four States have gross receipts taxes instead of corporation income tax, Ohio and Texas allow combined reporting, and Nevada and Washington require separate filing. South Dakota and Wyoming are the only States that do not levy a corporate income tax or a gross receipt tax.

business tax return on behalf of the affiliated group. For convenience the court will refer to these as combined returns.[3] The second type of State corporation business tax return is known as separate entity reporting. The major difference between the methods is how they treat the income and expenses the entity incurs from its transactions with affiliates. In non-separate reporting, inter-company transactions are eliminated when determining net taxable income/loss, while in separate reporting they are not.

The laws of each State can be similar or different, and the definitions of combined, consolidated, and unitary can vary. Generally, combined reporting is a State tax filing method wherein members of a commonly controlled group of businesses, called a unitary group, are required to be treated as a unitary business. The unitary group's combined net income is used to calculate its total worldwide earnings which is taxed as income in each State in which it operates. Each State imposes specific requirements regarding which entity in a unitary group must file the corporation tax return. Additionally, the liability for payment of the resulting tax due is also specified, with most non-separate States imposing joint and several liability on all members of the group for the tax due.[4]

Conversely, separate reporting States require that each member of an affiliated group file a separate corporation tax return reporting the individual entity's income and deductions, whether or not a consolidated federal income tax return was filed. In separate reporting States, transactions between affiliates are treated as unrelated and consequently they appear as income or tax-deductible expenses on the separate tax return.

---

[3] Although there are multiple designations for this type of tax return (mandatory combined reporting, unitary/combined reporting, elective consolidated reporting), for the purpose of this opinion, the court will refer to these as combined returns.

[4] See e.g. Conn. Gen. Stat. § 12-222 (g) (3); 830 Mass. Code Regs. 63.32B.2; N.Y. Tax Law § 210-C (6).

## 2. **The Taxpayer and its Parent.**

The plaintiff, Daimler Investments US Corporation ("Taxpayer")[5], is wholly owned by Daimler North America Corporation ("Parent"). Taxpayer serves as the financing arm of Parent, which is a division of a multinational automotive company with brands including Mercedes-Benz Cars, Daimler Trucks, Mercedes-Benz Vans, and Daimler Buses.

During the audit period, December 2008 through December 2011, Taxpayer was the sole member of several limited liability companies which were disregarded entities for federal income tax purposes. Taxpayer and/or its limited liability companies held an interest in certain partnerships during the audit period. Taxpayer itself, without its limited liability companies or investment interests, has no business activity in New Jersey.

Based on their nation-wide business activities, Parent and Taxpayer were required to file corporation tax returns in the majority of States in the United States of America, and in the District of Columbia. Some of these jurisdictions had non-separate return requirements, and others required separate reporting. During the audit period, New Jersey was a separate return State, and therefore both Parent and Taxpayer were required to file separate New Jersey Corporation Business Tax ("CBT") returns.[6] See N.J.A.C. 18:7-11.15.

In the non-separate reporting jurisdictions, Parent filed the group's corporation business tax combined returns and paid the tax. To fairly apportion these tax liabilities paid by Parent, on May 1,

_____

[5] Taxpayer is a Delaware corporation with a principal place of business in Farmington Hills, Michigan.

[6] Effective July 1, 2018, New Jersey permits combined reporting for tax year 2019. See N.J.S.A. 54:10A-4.8 (2018).

2007[7], Parent entered into a tax sharing agreement ("Intercompany Agreement") with its affiliates, including Taxpayer. The Intercompany Agreement required the parties to make Intercompany Payments to each other, based on the estimated tax liabilities and benefits amongst the affiliates arising from State combined tax returns ("Intercompany Payments").

The Intercompany Payments are computed by multiplying the affiliate's estimated federal taxable income by the effective tax rate. The effective tax rate is a percentage of the affiliate's total State apportionment percentages multiplied by the State tax rates in those States. A true-up (reconciliation) is performed every year based on the affiliate's actual federal taxable income.[8]

The Intercompany Payments do not equate to the same amount of tax the affiliate would have had to pay if it had filed a separate return in a non-separate return State. This is because the entity

---

[7] There have been three addendums to the Intercompany Agreement. A December 31, 2008 addendum covers LOLO/SILO adjustments, the consolidated group's election to forego bonus depreciation, and adjustment of definition of federal Taxable Income (line 28 less line 29b). A January 29, 2010 addendum covers the adjustment to definition of Federal taxable income, forced bonus depreciation and LILO/SILO adjustments. A January 11, 2011 addendum replaces the original Intercompany Agreement, and provides for the allocation of State income taxes to Parent from Taxpayer's State income tax returns attributable to the Mercedes-Benz Financial Services Group.

[8] The Calculation has six basic steps:

1. The affiliate's federal taxable income for the year is estimated.
2. The effective tax rate is determined. The effective tax rate is the total apportionment factor from the preceding year of every affiliate, in each of the total combined, consolidated and unitary States, that is multiplied by the tax rate in that State.
3. The Effective Rates in each State are added together.
4. The total Effective Rate is then multiplied by each affiliate's estimated federal taxable income.
5. Multiplying the affiliate's estimated taxable income by the total Effective Tax Rate provides the calculation for the Affiliate's Intercompany Payment.
6. At a later time, a "true-up" is prepared using the affiliate's actual federal taxable income for that year.

designated to file the non-separate return (usually the parent) reports all income, gains, losses, deductions and credits of its affiliates as one entity (unitary business), and has the ability to offset certain losses.

Prior to 2008, Parent and its affiliate companies did not have a uniform method for representing the Intercompany Payments on the federal tax return. As a result, not all affiliate companies were reporting the Intercompany Payments on the same line of the federal income tax return. In order to ensure consistency, Parent directed all affiliates to report the Intercompany Payments on Line 17 "Taxes and Licenses" on their Federal Form 1120 Corporation Income Tax Return, beginning with tax year 2008.

For 2008 and 2009, Taxpayer received more payments from its affiliates than Taxpayer paid under the Intercompany Agreement. Therefore, Taxpayer had negative net Intercompany Payments for those years. For 2010 and 2011, Taxpayer paid more to its affiliates than it received under the Intercompany Agreement. Consequently, Taxpayer had positive net Intercompany Payments for those years.

### 3. The 2008 through 2011 Corporation Business Tax Returns

#### a. Federal

For the tax years at issue, Parent filed a consolidated Federal Form 1120 Corporation Income Tax Return on behalf of itself and its subsidiaries, including Taxpayer. In computing its federal taxable income, Parent deducted all of the taxes that it paid to States and other jurisdictions. Parent also deducted the net Intercompany Payments pursuant to the Intercompany Agreement as ordinary and necessary business expenses.[9]

---

[9] Based on questions posed by the court during the first oral argument, the parties agreed to provide additional information using the sample tax year ending December 31, 2011. For that year, Parent filed corporate income tax returns in thirty-five combined, consolidated and/or unitary States, plus the District of Columbia, all of which included the income and activities of Taxpayer.

As instructed by Parent, Taxpayer included both the deduction for taxes it paid directly to a State, city or locality, and the Intercompany Payments (negative or positive) on Line 17 of its Federal pro forma income tax return.

**b.  New Jersey**

Parent and Taxpayer also timely filed separate New Jersey CBT returns for the tax years at issue.

When calculating entire net income on its CBT returns, Parent added to its federal taxable income all of the taxes that it paid to States, including the thirty-four States and the District of Columbia in which it filed combined returns.  Parent did not add to its federal taxable income the net payments it paid or received under the Intercompany Agreement for 2009, 2010, and 2011.  It did however add the amounts that it received under the Intercompany Agreement to its federal taxable income in 2008.

On its CBT returns, Taxpayer calculated its entire net income by adding to its federal taxable income all of the taxes that it paid directly to States, however it did not add back its Intercompany Payments, and treated the net Intercompany Payments as an ordinary and necessary business expense.

**c.  New Jersey Audit**

In December of 2012, the Director, Division of Taxation's ("Director") audited Taxpayer's 2008, 2009, 2010 and 2011 CBT returns.  As a result of the audit, the Director issued a Notice of Assessment Related to Final Audit Determination ("Notice"), dated October 20, 2014, asserting a balance due for the years at issue.  The Director denied the Intercompany Payment deductions as an unsubstantiated expense. The Director recomputed Taxpayer's entire net income by adding to Taxpayer's federal taxable income the positive net Intercompany payments for 2010 and 2011 only.  The Director did not add to Taxpayer's federal taxable income for 2008 and 2009 the negative net Intercompany Payments.  The Notice also asserted a 5% late penalty payment on the additional tax asserted as due.

On January 16, 2015, Taxpayer timely filed a protest of the Notice and requested a hearing. The parties participated in an administrative conference on July 16, 2015.

On November 25, 2015, the Director requested that Taxpayer provide the calculation worksheet for the "State Income Taxes – Tax Sharing" account for 2007, 2008, 2009, 2010, and 2011. The Director asserts that Taxpayer did not provide the requested information.

On February 12, 2016, the Director issued a Final Determination that upheld the adjustments relating to the add-back of the Intercompany Payments for 2010 and 2011, but did not add the negative net Intercompany Payments back to Taxpayer's federal taxable income for 2008 and 2009. The Conferee concluded that based on the information provided by Taxpayer, he could not determine whether Taxpayer had accurately reported its income to New Jersey. Alternatively, assuming Taxpayer provided sufficient proofs, the Director asserted that Taxpayer is nevertheless required to add-back the Intercompany Payments as de facto State income tax payments, pursuant to N.J.S.A. 54:10-4(k) (2) (C). The Director assessed additional CBT of $4,884,370.45[10] including interest and penalties.[11]

On May 11, 2016, Taxpayer timely filed a Complaint in the Tax Court contesting the Final Determination. Taxation filed its Answer on September 13, 2016. The parties exchanged discovery and Taxpayer filed its motion for summary judgment on October 13, 2017. The Director opposed Taxpayer's motion and filed a cross motion for summary judgment on March 2, 2018. The court heard oral argument on April 11, 2018.

---

[10] On August 3, 2017, in response to discovery requests, the Director asserted the following tax obligations:

| Tax Year | CBT | Penalty | Interest | Total |
|---|---|---|---|---|
| 2010 | $1,845,575.68 | $92,278.78 | $668,930.76 | $2,606,785.22 |
| 2011 | $1,713,287.25 | $85,664.36 | $478,633.62 | $2,277,585.23 |
| Total | $3,558,682.93 | $177,943.14 | $1,147,564.38 | $4,884,370.45 |

[11] The Director continues to assert a 5% late payment penalty on the tax asserted as due.

At the conclusion of the hearing, the court requested additional information and submissions. Both parties filed supplemental pleadings and a second hearing was held on January 15, 2019.

## II.  Legal Analysis

### A. Summary Judgment

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).  In Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520 (1995), our Supreme Court established the standard for summary judgment as follows:

> [W]hen deciding a motion for summary judgment under Rule 4:46-2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
>
> [Brill, 142 N.J. at 523.]

"The express import of the Brill decision was to 'encourage trial courts not to refrain from granting summary judgment when the proper circumstances present themselves.'"  Howell Twp. v. Monmouth County Bd. of Taxation, 18 N.J. Tax 149, 153 (Tax 1999) (quoting Brill, 142 N.J. at 541).

There are no material facts in dispute between the parties relevant to the issue of whether Intercompany Payments, based on tax sharing agreements that serve to estimate other States' tax obligations, are subject to CBT add-back for the purpose of computing entire net income.  The sole question is one of statutory interpretation concerning the calculation of the tax base, which can be determined by application of the law to the undisputed facts.

9

Taxpayer contends that the plain language of the controlling statute, N.J.S.A. 54:10A-4 (k) (2) (C), applies only to the payer of the tax. Since Parent paid the corporation business tax due in the non-separate reporting States (not Taxpayer), Taxpayer posits that Parent is the entity that is subject to the N.J.S.A. 54:10A-4 (k) (2) (C) add back. Also since the taxes were paid by Parent, the taxes are not Taxpayer's liability as accrued to a State. Finally Taxpayer argues that Intercompany Payments are estimates of taxes and do not represent payments of any specific tax, and that any ambiguity in the statute should be resolved in its favor.

The Director asserts four arguments. First, it argues that Taxpayer is statutorily required to add-back the Intercompany Payments pursuant to N.J.S.A. 54:10A-4 (k) (2) (C) and -10. Second, the Director argues that Taxpayer failed to provide adequate supporting documentation for the Intercompany Payments. Third, the Director claims that Taxpayer's financial reporting of its Intercompany Payments is distortive and raises income-shifting concerns. Finally, the Director asserts that Taxpayer is required to add-back the Intercompany Payments as de facto State income tax payments.

As this is entirely a matter of statutory interpretation, the court finds that this matter is ripe for summary judgment.

## B. Standard of Review

The court's analysis is guided by the familiar principle that the Director's interpretation of tax statutes is entitled to a presumption of validity. "Courts have recognized the Director's expertise in the highly specialized and technical area of taxation." Aetna Burglar & Fire Alarm Co. v. Director, Div. of Taxation, 16 N.J. Tax 584, 589 (Tax 1997) (citing Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 327 (1984)). The scope of judicial review of the Director's decision with respect to the imposition of a tax "is limited." Quest Diagnostics, Inc. v. Director, Div. of Taxation, 387 N.J. Super. 104, 109 (App. Div. 2006), certif. denied, 188 N.J. 577 (2006). "The Supreme Court has directed the

10

courts to accord 'great respect' to Taxation's application of tax statutes, 'so long as it is not plainly unreasonable.'" PPL Elec. Utilities Corp. v. Director, Div. of Taxation, 28 N.J. Tax 128, 137 (Tax 2014) (citing Metromedia, 97 N.J. at 327); see also GE Solid State, Inc. v. Director, Div. of Taxation, 132 N.J. 298, 306 (1993) ("Generally, courts accord substantial deference to the interpretation an agency gives to a statute that the agency is charged with enforcing.").

However, judicial deference is not absolute. An administrative agency's interpretation that is plainly at odds with a statute will not be upheld. See Oberhand v. Director, Div. of Taxation, 193 N.J. 558, 568 (2008) (citing GE Solid State, 132 N.J. at 306); Advo, Inc. v. Director, Div. of Taxation, 25 N.J. Tax 504, 511 (Tax 2010).

The court also acknowledges that the question of how broadly New Jersey can apply its tax is a question of tax imposition not deduction and accordingly, any doubt must be resolved in favor of the Taxpayer. As referenced by our Supreme Court in Fedders Fin. Corp. v. Director, Div. of Taxation, 96 N.J. 376 (1984), there are two principles of statutory interpretation relevant to the analysis of taxing statutes. In that opinion, Justice Schreiber wrote:

> First, the court should follow the clear import of statutory language. Second, when interpretation of a taxing provision is in doubt, and there is no legislative history that dispels that doubt, the court should construe the statute in favor of the Taxpayer. We applied those guidelines in Kingsley v. Hawthorne Fabrics, 41 N.J. 521 (1964) when interpreting two of the same provisions that are under consideration here, N.J.S.A. 54:10A-4(d) and -4(e). In Kingsley, we quoted approvingly the following language from Gould v. Gould, 245 U.S. 151, 153 (1917):
>
> > In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the government, and in favor of the citizen.

11

> [W]e continue to adhere to the view that our task is to ascertain the legislative intent. When the statutory language is unclear and the legislative history is wanting, the doubt referred to in Gould exists and its principle is applicable. This situation is to be distinguished from the one in which the Taxpayer seeks an exemption from a taxing statute. Then the probable legislative intent is one of inclusion and exemptions are to be construed narrowly.
>
> [Fedders, 96 N.J. at 385-86 (alterations in original, citations omitted).]

With these guiding principles in mind, the court examines the parties' interpretation of N.J.S.A. 54:10A-4 (k) (2) (C) as it relates to Taxpayer's Intercompany Payments.

## C. CBT and the Add-Back Statute

New Jersey's CBT Act taxes each non-exempt domestic and foreign corporation:

> [F]or the privilege of having or exercising its corporate franchise in this State, or for the privilege of deriving receipts from sources within this State, or for the privilege of engaging in contacts with this State, or for the privilege of doing business, employing or owning capital or property, or maintaining an office, in this State.
>
> [N.J.S.A. 54:10A-2.]

The determination of CBT tax base is a two-step process. Step one is the determination of a corporation's entire net income, and step two is the application of an allocation factor.[12] Only step one, the determination of entire net income, is at issue in this motion.

N.J.S.A. 54:10A-4 (k) defines a corporation's entire net income as the "total net income from all sources, whether within or without the United States, and shall include the gain derived from the employment of capital or labor, or from both combined, as well as profit gained through a sale or

_____

[12] New Jersey may only tax its State-specific share of the total entire net income, and therefore must apply an allocation factor pursuant to N.J.S.A. 54:10A-6, which provides that the "portion of its entire net income to be used as a measure of the tax imposed…shall be determined by multiplying such…entire net income…by an allocation factor. . . ." N.J.S.A. 54:10A-6.

conversion of capital assets." This broad definition of entire net income is further limited in the following paragraph of the statute:

> For the purpose of this act, the amount of a Taxpayer's entire net income shall be deemed prima facie to be equal in amount to the taxable income, before net operating loss deduction and special deductions, which the Taxpayer is required to report . . . to the United States Treasury Department for the purpose of computing its federal income tax . . . .
>
> [Ibid.]

After linking entire net income to the federal return, the statute provides that "[e]ntire net income shall be determined without the exclusion, deduction or credit of" and lists more than a dozen exceptions – both additions and subtractions – to federal statutes that define federal taxable income. See N.J.S.A. 54:10A-4 (k) (2) (A) through (J). The statute also contains various subsections refining the calculation of an entity's entire net income for CBT purposes.

The Director contends that N.J.S.A. 54:10A-4 (k) (2) (C) is a specific statutory add-back provision that applies to Taxpayer's Intercompany Payments. That statutory section provides for the add-back of:

> Taxes paid or accrued to the United States, a possession or territory of the United States, a state, a political subdivision thereof, or the District of Columbia, or to any foreign country, state, province, territory or subdivision thereof, on or measured by profits or income, or business presence or business activity, or the tax imposed by this act, or any tax paid or accrued with respect to subsidiary dividends excluded from entire net income as provided in paragraph (5) of subsection (k) of this section.
>
> [N.J.S.A. 54:10A-4 (k) (2) (C) (emphases added).]

Taxes that do not qualify as being measured by business presence or business activity are enumerated in the regulation N.J.A.C. 18:7-8.7(f) which states that: " '[b]usiness presence' or 'business activity' taxes include, but are not limited to, net worth taxes, gross receipts taxes, and single business taxes."

13

Both the Director and Taxpayer agree that Taxpayer added back all of the taxes that it paid to other separate reporting States on its CBT return. The legal issue to be decided is whether Taxpayer is required to add back any tax liabilities to the non-separate reporting jurisdictions, despite those tax payments having been made by Parent as part of combined reporting.

The Director asserts that Taxpayer must add-back the positive 2010 and 2011 Intercompany Payments because they represent either intercompany reimbursements for State income taxes paid or de facto State income tax payments. The Director argues that only positive tax sharing amounts are potentially valid deductions and subject to add-back pursuant to N.J.S.A. 54:10A-4 (k) (2) (C).[13] In support of this argument, the Director points to Taxpayer's Intercompany Agreement that states as its purpose "for allocation of State taxes to corporate members of the DIUS Group from combined, consolidated and unitary tax returns." The Director also relies on the fact that the Intercompany Payments are listed as "State-Income Taxes-Tax Sharing" on the accompanying CBT Line 17.

Taxpayer argues that the Intercompany Payments are not de facto State income tax payments at all. Taxpayer refers to a plain reading of N.J.S.A. 54:10A-4 (k) (2) (C), and asserts that the add-back payment must represent a tax paid or accrued directly by the Taxpayer. Taxpayer posits that the Intercompany Payments paid to affiliates are not payments to a State, and moreover the payments do not represent a specific tax accrued to a State. It notes that without a legally enforceable claim against Taxpayer in those non-separate return States, the taxes are not accrued. Since Parent filed and paid all the non-separate return State income taxes, those States do not have a legal claim against Taxpayer for any accrued taxes.

---

[13] The Director suggests that the negative tax sharing amounts reported by Taxpayer in 2008 and 2009 simply mean that an affiliate(s) paid more than it received, the affiliate(s) has a positive net tax sharing balance, and such amounts are potentially deductible to the affiliate and subject to the add-back. In sum, the negative tax sharing amounts do not belong on Taxpayer's CBT tax return.

14

Taxpayer also argues that a plain reading of the add-back statute required the Parent to add back the taxes paid to non-separate reporting jurisdictions, and that to require an add-back of the Intercompany Payments by Taxpayer as a de facto tax would result in double taxation. There is no evidence to dispute that Parent's 2008 through 2011 CBT returns included the add-back of all State income taxes that it paid in both separate and non-separate reporting States.

At the court's request, Taxpayer provided a supplemental submission analyzing the non-separate State income tax returns filed by Parent to determine the legal responsibility for payment of the State income tax in those non-separate reporting jurisdictions. Due to the volume of information requested, Taxpayer provided as a sample the 2011 State corporate income tax returns for Connecticut, Illinois, Texas, West Virginia, and Wisconsin.[14]

## D. Analysis

The Court agrees with Taxpayer's position that the Intercompany Payment is not a tax. A tax is levied by a governmental agency and measured by profits or income, or business presence or activity. Nor is the Intercompany Payment an accrued tax, which is a tax that has been incurred but not yet paid or payable. Black's Law Dictionary 1469 (7th ed. 1999).

The Court also disagrees with Director's position that the Intercompany Payment is an indirect payment of tax. First, as Taxpayer argued, the statutory language of N.J.S.A. 54:10A-4 (k) (2) (C) does not have the requirement for adding back the "indirect" payment of tax. This distinguishes N.J.S.A. 54:10A-4 (k) (2) (C) from other statutory add-back provisions in which our Legislature has specifically required the add-back of indirect payments. See N.J.S.A. 54:10A-4 (k) (2) (I); N.J.S.A. 54:10A-4.4 (b) (referring to intercompany interest payments and intangible (royalty) payments).

---

[14] Taxpayer analyzed the responsibilities of both Parent and Taxpayer in five of the 35 States in which Taxpayer has a substantial presence, and offered to submit an analysis of the remaining 30 States and the District of Columbia. No additional submission was requested by the Court or the Director.

15

Second, the Intercompany Payments do not relate to a specific State tax payment made by the Parent on behalf of Taxpayer or any other affiliate. Instead, the Intercompany Payments are an accounting mechanism employed by Parent to calculate, estimate, and reconcile Parent's payment of Taxpayer's tax obligations on its apportioned income in consolidated and combined reporting jurisdictions. The Intercompany Payment is not an indirect payment or reimbursement of the separately calculated State tax that was due and owing by Taxpayer, nor is it based on Taxpayer's actual tax liability in any given State.

As to the Director's argument that the Intercompany Payments are accrued taxes, this is simply not the case. Without a legally enforceable claim against Taxpayer in those non-separate return States, the taxes cannot be categorized as accrued. Since Parent filed the necessary corporation business tax returns, and paid all of the non-separate return State taxes, those States do not have a legal claim against Taxpayer and the taxes are not accrued.

The court finds that the Intercompany Payments are fundamentally nothing more than contractual obligations within the consolidated group to fairly apportion expenses undertaken or imposed on the Parent. Unlike other intercompany payments that are perceived as having been designed to artificially move and hide income from one entity to another related entity, the Intercompany Agreements at issue here are entirely based on the estimated tax obligations of the individual affiliates, as calculated utilizing the benefit of consolidated or combined reporting. Thus the court finds that the reference to "taxes paid or accrued" does not refer to the Intercompany Payments. "Taxes paid or accrued" refers to is the tax liability itself, without regard to filing requirements of any given State or the entity making the actual payment of the tax.

The court recognizes that many of the add-back provisions were enacted as a result of corporate structures that were designed to close tax loopholes by increasing a company's expenses through

16

diversion of income to a separate related entity in a different taxing jurisdiction deemed more beneficial to the group as a whole. The tax add-back statute however, does not appear to have been in response to any tax avoidance schemes or loopholes, as evidenced by the Legislative history of the statutes.

In passing N.J.S.A. 54:10A-4.4, the Legislature specifically described the proposed statute as "loophole closers", and in the Assembly Statement, the Assembly Budget Committee addressed the reason for the add-back requirement for indirect payments of interest and intangibles as follows:

> The provision addresses, but does not apply solely to, a tax avoidance device that allows a multicorporate structure to export income from a state where the income is generated as a form of expense (for example, as a royalty payment to an out-of-state affiliate that the paying corporation deducts from its income) and then import the income back (for example as a tax-free dividend or as a loan). The bill continues to allow such deductions in areas that are established as "non-tax avoidance" situations. …
>
> The bill also restricts deductibility of inter-affiliate interest expenses. However, the bill again continues to such deductions in areas that are established as "non-tax avoidance" situations.
>
> [Assemb. Budget Comm. Statement to A. 2501 (L. 2002, c. 40) at 2. (N.J. 2002).]

This is not the case for the add-back pursuant to N.J.S.A. 54:10A-4 (k) (2) (C). The purpose of the add-back of taxes paid or accrued to other jurisdictions is to measure an entity's income as it comports to its business activities in New Jersey. When amending N.J.S.A. 54:10A-4 (k) (2) (C), the Legislature added in the phrase "business presence or business activity" and in the Assembly Appropriations Committee Statement, the Legislature further clarified that:

> If the deduction of the taxes of other jurisdictions is allowed, corporations which do business in several states pay a lower effective rate of tax on their New Jersey activities than do corporations which only do business in New Jersey. This bill ends that tax rate discrimination.
>
> [Assemb. Appropriations Comm. Statement to A. 273/ A. 1870 at 2. (L. 1993, c. 173) (N.J. 1993).]

17

For this reason, non-separate reporting States generally have adopted this add-back provision even though they have consolidated, combined or unitary filing.[15] The tax add-backs are essential in formulating a snapshot of the allocable business activity or presence among the various States in which a taxpayer does business.

The Legislature's intent and the Court's rationale are premised on the need to measure business activity or presence for the purpose of imposing fair and balanced taxation. In a non-separate reporting State, a subsidiary in a corporate group must calculate and contribute its apportioned income on the basis of the corporate group's combined profit. This does not mean that the subsidiary does not have any tax liability for its business activity or presence in that State, or that only the parent has the tax liability. This is evident by the imposition of joint and several liability for the payment of the tax.

By way of example, in the present case, if Parent did not have nexus with New Jersey, then it would not have been required to file a separate CBT return. If Parent did not file a CBT return, under Taxpayer's interpretation of N.J.S.A. 54:10A-4 (k) (2) (C), no entity would be required to add-back the taxes paid to non-separate reporting States. In that instance, Taxpayer's business activity or presence as measured by its tax liability in the non-separate return States would not be accounted for, and the tax rate discrimination the Legislature intended to prevent would result.

### III. Conclusion

The court concludes that the controlling statute, N.J.S.A. 54:10A-4 (k) (2) (C), is meant to refer to the tax liability of the reporting entity in other jurisdictions, and not to the entity making payment of

---

[15] See e.g. Conn. Gen. Stat. § 12-217 (a) (1) (A) (i); 35 Ill. Comp. Stat. 5/203 (b) (2) (B); Mass. Gen. Laws. ch. 63, § 30 (4) (iii); W.Va. Code. § 11-24-6 (a) (3); Wis. Stat. § 71.26 (3) (g).

the tax. The Intercompany Payments, although based on estimated tax payments, are irrelevant for the purpose of reporting tax liability. The add-back is to be calculated based on the tax liability of Taxpayer as calculated by its pro rata share of the Parent's total tax obligation to the other non-separate reporting jurisdictions. Once these calculations are made and the add-back is totaled, equity demands that Taxpayer's CBT tax obligations be reduced by any overpayment of CBT made by its Parent on Taxpayer's behalf, for the tax years 2008 through 2011.

Additionally, the court finds that Parent's CBT reporting of the add-back of payments to other jurisdictions while in error, was based on its reading of the statute, the lack of any specific regulations by the Director, and the lack of any such guidance or recommendation during the audit period. Therefore, upon reconciliation of Taxpayer's CBT, any outstanding tax obligation by Taxpayer shall include statutory interest, but not any penalty.

Sincerely,

/s/ Mary Siobhan Brennan, J.T.C.